# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1163

_____

| | | |
|---|---|---|
| Mohamed Ibrahim Ismail, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order |
| | * | of the Board of Immigration Appeals. |
| John Ashcroft, Attorney General of | * | |
| the United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 17, 2004
Filed: February 4, 2005

_____

Before MURPHY, HANSEN, and MELLOY Circuit Judges.

_____

MELLOY, Circuit Judge.

Mohamed Ibrahim Ismail ("Mr. Ismail") seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of the Immigration Judge ("IJ") that found Mr. Ismail failed to prove past persecution, a well-founded fear of future persecution, or eligibility for protection under Article III of the Convention Against Torture.

## I.    Factual Background

Mr. Ismail testified to the following facts.  He is a citizen of Somalia.  He was born in Mogadishu, Somalia and is a member of the Midgan clan.  Mr. Ismail is married and has six children, and his wife and children reside in Ethiopia.  Mr. Ismail and his family fled to Ethiopia in 1993 after suffering persecution based on their Midgan clan membership.

Mr. Ismail described acts of violence perpetrated on his family by members of the Hawiye clan.  In 1991, Hawiye militia members came to Mr. Ismail's home, killed his father, beat his mother, and raped his wife, who was pregnant.  The militiamen beat Mr. Ismail and brought him to their camp.  He was later released and walked six hours to his home.  Militia members visited Mr. Ismail's home five or six more times.  Each time, they threatened and beat the family.  Mr. Ismail's wife was raped on multiple occasions.

In 1993, Mr. Ismail and his family moved to Ethiopia.  Mr. Ismail lived there with his family until 1997, when the Ethiopian government began compelling men to serve in the war.  Mr. Ismail went to Djibouti and began to collect money to travel to the United States.  Mr. Ismail flew from Djibouti to France and then on to Los Angeles, California.  From there, he took a bus to San Diego.  He lived in San Diego until October 1999 when he moved to San Jose until August 2000.

## II.    Procedural Background

Mr. Ismail filed for asylum on October 11, 1999.  His case was referred to an Immigration Judge ("IJ") in San Francisco, and a Notice to Appear was issued on December 15, 1999.  Mr. Ismail appeared before an IJ on January 26, 2000 and conceded removability. On May 19, 2000, Mr. Ismail appeared at an asylum hearing.

On September 18, 2000, Mr. Ismail's Motion for Change of Venue was granted and his case was transferred to Bloomington, Minnesota.

The IJ in Minnesota held a hearing on Mr. Ismail's applications for asylum, withholding of removal, and Article III protection. The IJ admitted evidence, including Mr. Ismail's birth certificate, Mr. Ismail's fingerprint application and biographic information form, medical records, photographs, and letters. The IJ excluded: (1) an INS forensic document that was not accompanied by the expert's curriculum vitae, as required by court order; (2) letters submitted by Mr. Ismail that lacked English translations; and (3) testimony from two of Mr. Ismail's proposed witnesses, one because Mr. Ismail failed to provide the alien registration number for the individual, and the other because Mr. Ismail failed to provide the address, phone number or alien registration number for the individual.

The IJ denied Mr. Ismail's request for asylum, withholding of removal, relief under Article III of the Convention Against Torture, and voluntary departure, and ordered Mr. Ismail removed to Somalia. The BIA affirmed and ordered Mr. Ismail deported. Mr. Ismail now appeals.

## III.    Statutory Background

"The Attorney General may grant asylum to an alien . . . if the Attorney General determines that such alien is a refugee." 8 U.S.C. § 1158(b)(1). A refugee is "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

The petitioner has the burden of showing refugee status. 8 C.F.R. § 208.13(a). To show a well-founded fear of persecution, the petitioner "must demonstrate a fear that is subjectively genuine and objectively reasonable. For an alien's fear of persecution to be objectively reasonable, the fear must have basis in reality and must be neither irrational nor so speculative or general as to lack credibility." Perinpanathan v. I.N.S., 310 F.3d 594, 598 (8th Cir. 2002) (internal citation omitted).

## IV.    The Findings Below

Although the facts, as alleged by Mr. Ismail, would compel a finding of asylum, if true, the IJ found that Mr. Ismail was not credible. First, the IJ found him not credible because of the lack of documentary evidence, such as documents regarding Mr. Ismail's identity, nationality, clan membership, his time in Ethiopia, and his travel from Djibouti to France to California. Second, the IJ found him not credible because of "countless inconsistencies" between his hearing testimony, his testimony at an earlier proceeding, his interview with an asylum officer, and his asylum application.

The BIA affirmed the IJ's adverse credibility finding, reasoning that it was supported by "material discrepancies in the record" that had not been satisfactorily explained by Mr. Ismail. The BIA pointed out three discrepancies in particular. First, the BIA found Mr. Ismail was inconsistent about how his father was killed during the first attack on the family home. According to the asylum officer's notes, Mr. Ismail had claimed during an interview that his father was stabbed during a Hawiye raid of the house. However, Mr. Ismail had previously testified that, when the house was raided, "they starting slashing my father." During later proceedings, Mr. Ismail testified that his father was shot during the raid.

Second, the BIA found that Mr. Ismail was inconsistent about when his wife was stabbed with a bayonet. At different points in the proceedings, Mr. Ismail had

stated that: (1) his wife was injured by the bayonet during the first raid of the home while protecting Mr. Ismail's father, (2) during the first raid, his wife was taken to a different room (not mentioning the bayonet wound), and (3) his wife was injured by the bayonet during a later attack, but that it "was not a big injury."

Third, the BIA found that Mr. Ismail was inconsistent about facts regarding the first raid on his home. The BIA found, for example, that Mr. Ismail had testified initially that the Hawiye left him tied up at the conclusion of the attack, but had subsequently testified that he was taken by the Hawiye to a place about ten minutes from his home and was held for two days before making his way back home.

## V.    Standard of Review

The BIA's decision is the subject of our review because it is the final agency decision. However, to the extent that the BIA adopted the IJ's findings, we review those IJ findings as part of the final agency decision. Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004).

"The BIA's determination that an alien is not eligible for asylum or withholding of deportation is reviewed for substantial evidence, and may not be overturned unless 'the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.'" Perinpanathan, 310 F.3d at 597 (quoting Feleke v. I.N.S., 118 F.3d 594, 598 (8th Cir. 1997)); 8 U.S.C. § 1252(b)(4)(B); see also I.N.S. v. Elias Zacarias, 502 U.S. 478, 481 n. 1 (1992) ("To reverse the BIA finding we must find that the evidence not only *supports* [the opposite] conclusion, but *compels* it.") The question before us is "whether, based on the record considered as a whole, the BIA's decision was supported by reasonable, substantial, and probative evidence." Perinpanathan, 310 F.3d at 597 (internal quotations omitted).

-5-

"It is well settled that 'an immigration judge is in the best position to make credibility findings because he [or she] sees the witness as the testimony is given.'" Mayo v. Ashcroft, 317 F.3d 867, 871 (8th Cir. 2003) (quoting Hartooni v. I.N.S., 21 F.3d 336, 342 (9th Cir. 1994)). Therefore, we "defer[] to an immigration judge's credibility finding where the finding is 'supported by a specific, cogent reason for disbelief.'" Perinpanathan, 310 F.3d at 597 (quoting Ghasemimehr v. I.N.S., 7 F.3d 1389, 1391 (8th Cir. 1993)).

## VI.    Discussion

We find that the BIA's decision that Mr. Ismail is not eligible for asylum and withholding of removal is supported by substantial evidence. Both the IJ and the BIA found Mr. Ismail not credible. This credibility finding was supported by multiple inconsistencies between Mr. Ismail's statements in his asylum application, his interview with an asylum officer, and his testimony in the proceedings. Mr. Ismail claims that his misunderstanding of the proceedings and time constraints led him to be less complete at some times than others. He also contends an incompetent interpreter inserted mistakes into the record. While these explanations may seem plausible, we are not free to reverse merely for this reason. The issue for us to decide is whether the finding below is supported by substantial evidence. We are free to reverse only when "'the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.'" Perinpanathan, 310 F.3d at 597 (quoting Feleke v. I.N.S., 118 F.3d at 598). The IJ, with the benefit of live testimony, disbelieved Mr. Ismail. The IJ gave "specific, cogent" reasons for this disbelief. Perinpanathan, 310 F.3d at 597 (quoting Ghasemimehr v. I.N.S., 7 F.3d at 1391). We must therefore defer to the IJ's finding and affirm. Id.

Mr. Ismail also contends that he is entitled to reversal because the IJ violated his due process rights by excluding evidence and two potential witnesses, limiting time for his direct examination, objecting to a line of questioning by his counsel, and

allowing the government to use illegible notes from the asylum officer. "The Supreme Court has long recognized that deportable aliens are entitled to constitutional protections of due process." <u>Lopez v. Heinauer</u>, 332 F.3d 507, 512 (8th Cir. 2003). To prevail on a denial of due process claim, "an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice." <u>Id.</u> To prove prejudice, an alien must show that the outcome of the proceedings may well have been different had the due process violation not occurred. <u>Al Khouri v. Ashcroft</u>, 362 F.3d 461, 466 (8th Cir. 2004). In this case, even assuming there was a fundamental procedural error, Mr. Ismail's claim does not form a basis for reversal. Mr. Ismail failed to suggest, much less show, prejudice resulted from the alleged due process violations. Without this showing, his claim does not warrant reversal.

Since Mr. Ismail has not met the standard for asylum, it follows that he has failed to meet the higher standard for withholding of removal. <u>See</u> <u>Zakirov v. Ashcroft</u>, 384 F.3d 541, 547 (8th Cir. 2004). Mr. Ismail has also failed to show that it is more likely than not that he will be tortured should he return to Somalia. He is therefore not entitled to relief under Article III of the Convention Against Torture. <u>Id.</u>

_____