# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1709

_____

| | | |
|---|---|---|
| Jose Salkeld, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order |
| | * | of the Board of Immigration Appeals. |
| Alberto Gonzales,[1] Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: June 22, 2005
Filed: August 25, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

The agency formerly known as the Immigration and Naturalization Service (INS) placed Jose Salkeld, a thirty-six year-old citizen of the Republic of Peru, in removal proceedings for violating the terms of his non-immigration status. Salkeld admitted removability, but sought asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). He claimed, if

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

returned to Peru, his homosexuality would subject him to persecution. Salkeld seeks review of the Board of Immigration Appeal's (BIA) final order affirming the Immigration Judge's (IJ) decision denying, *inter alia*, his petition for withholding of removal and his request to continue removal proceedings. For the reasons discussed below, we deny the petition for review.

I

Salkeld initially entered the United States in December 1989. He attended Maryville College and Webster University in Saint Louis, Missouri from the time of his initial entry until 1993-1994, when financial hardship forced him to withdraw from school. Since his initial entry into the United States he returned to Peru three times. His last visit occurred in November 1995 when he returned home for four days to see his newly born nephew. Salkeld was readmitted into the United States as a non-immigration student to attend Maryville College.

Rather than returning to school, however, he secured employment, working in various capacities within the restaurant industry. All was well with Salkeld until February 2001, when he was convicted of one count of social security fraud for defaulting on a credit card obtained by unlawfully using the social security number of another. Following this conviction, the INS placed Salkeld in removal proceedings for working in the United States without permission in violation of the conditions of his non-immigration status.

Salkeld, represented by his lawyer, conceded removability, and requested relief by way of asylum, withholding of removal, and protection under Article III of the CAT. On August 7, 2001, Salkeld, again represented by his legal counsel, submitted an asylum application claiming fear of harm, abuse, and torture if returned to Peru because of his homosexuality. The IJ accepted his application and selected September 17, 2002, as the date for the hearing on the merits.

At the merits hearing, Salkeld's lawyer requested a continuance so as to allow his client time to retain new counsel. An apparent rift had developed between Salkeld and his lawyer over the decision not to pursue certain evidence. The last-minute request did not impress the IJ. He denied the continuance, stating it would not be in the interest of judicial economy where four hours had already been set aside for the hearing. Salkeld's application had been pending for over one year and the IJ was concerned the court's heavy caseload would add another year of delay if he granted the requested continuance. The IJ, although at first reluctant to do so, allowed Salkeld to personally address the court regarding the continuance. Salkeld informed him he did not intend to replace his lawyer at the last minute, but approximately one hour before the hearing he contacted another lawyer in New York who he believed would provide better representation. After listening to Salkeld's remarks, the IJ informed him he could withdraw his application for asylum or proceed with the hearing as represented, but a continuance would not be forthcoming.

Following a consult with his legal counsel, Salkeld chose to proceed with the hearing. He supported his application for asylum with his written sworn statement; his in-court testimony; the testimony of Professor Harry Vanden, a professor from the University of South Florida, who the IJ recognized as an expert in Latin studies with particular knowledge of Peru; and numerous documents depicting general conditions and treatment of homosexuals in Peru. He also submitted a redacted affidavit which had been submitted to the INS by an anonymous Peruvian asylant whose claim was based on his homosexuality. In addition, Salkeld submitted the written statement of his domestic partner and numerous photographs of them together. The IJ admitted into evidence all the documents submitted by Salkeld. The IJ also entered a finding the documentary evidence established Salkeld as being a homosexual.

In his sworn written statement, Salkeld stated he never disclosed his homosexuality to anyone while residing in Peru as his friends and family members held strong unfavorable attitudes about homosexuality. He also believed revealing

his sexual preference would place his life in danger due to the strong homophobic sentiment permeating Peruvian society. During his short return visits to Peru, Salkeld did not socialize in homosexual circles because he feared police abuse similar to incidents he had read about in newspapers, saw on television, or heard about from his cousin. Although he stated he was reluctant to do so, Salkeld first revealed his homosexuality to others in 1990 while residing within the United States. After many years of struggling with his homosexuality, Salkeld asserted he is now comfortable with it. His family in Peru, when he informed them of his homosexuality in 2001, was not.

At the removal hearing, Salkeld reiterated much of what he included in his sworn written statement. He expounded on the difficulties he experienced in Peru as a child and as a college student because he was perceived as having homosexual tendencies, and the confusion he endured as a result of his hidden homosexuality. Salkeld testified he had suffered verbal abuse, witnessed physical abuse of a fellow student on account of his homosexuality, but was never physically abused himself. For fear of abuse and mistreatment, Salkeld testified homosexuals in Peru hide their sexual orientation, but admitted there is an active gay and lesbian community in Peru and believed there were gay and lesbian discos and bars.

Professor Vanden testified telephonically on Salkeld's behalf. He testified Peruvian society is intolerant of homosexuality. According to Professor Vanden, any manifestation of homosexuality could invite a public reaction, sometimes a violent reaction. Police and other security forces often do nothing to protect homosexuals and periodically may even join in the harassment. The Peruvian government, Professor Vanden stated, often demotes and terminates the employment of employees with homosexual tendencies. His most alarming testimony, however, was related to incidents in Peru, occurring as late as 2001, where paramilitary groups hunted down and killed homosexuals.

On the other side of the testimonial spectrum, Professor Vanden acknowledged homosexuality is not against Peruvian law. He further acknowledged there are locations in Peru where homosexuals can live more safely than in other areas. He testified that in one of the safer areas the citizens held a "gay pride" week. He stated there are organizations in Peru, including more liberal elements of the Catholic church, working to bring about a change in the way homosexuals are viewed, although their progress is slow.

Following the submission of the testimony and documentary evidence, the IJ issued an oral decision finding Salkeld's asylum application was time-barred because it was not filed within one year of his arrival in the United States, or April 1, 1998 (whichever occurred last), and no extraordinary circumstances justified granting an exception to the one-year requirement. Notwithstanding this finding, the IJ went on to consider Salkeld's eligibility for asylum.

The IJ recognized Salkeld's status as a homosexual male, but concluded he failed to demonstrate he suffered past persecution because of his status. The IJ further concluded he failed to demonstrate a well-founded fear of future persecution. The IJ noted there are no criminal penalties for homosexual expression in Peru and there are some areas in Peru where homosexuals can live more safely. The IJ observed that living an openly homosexual lifestyle in Peru may provoke a reaction from private citizens or the police, but Salkeld did not reveal his status while living in Peru and there are no laws requiring homosexuals to register with the government. Inasmuch as Salkeld failed to establish asylum eligibility, the IJ concluded Salkeld was unable to meet the higher burden for withholding of removal.

Salkeld retained new counsel on appeal to the BIA. He challenged the IJ's finding he had failed to establish a well-founded fear of future persecution and the denial of withholding of removal. He also challenged the IJ's denial of the continuance request, contending it deprived him the opportunity to present evidence

from Peruvian homosexuals with first-hand knowledge of the persecution. The BIA issued its final order of removal on March 1, 2002, affirming the IJ's decision to dismiss the matter for the reasons stated in the IJ's opinion. As to the denial of Salkeld's request for a continuance, the BIA concluded the decision was within the sound discretion of the IJ and he was not denied a full and fair hearing. Salkeld thereafter petitioned this Court for review of the BIA's order.

II

The BIA's decision is the final decision of an agency, as such it is the subject of our review. Falaja v. Gonzales, 406 F.3d 1076, 1081 (8th Cir. 2005) (citing Ismail v. Ashcroft, 396 F.3d 970, 974 (8th Cir. 2005)). "To the extent, however, that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Id.

A

We first consider Salkeld's claim the IJ erred in determining he was not eligible for withholding of removal under 8 U.S.C. § 1231(b)(3). To qualify for withholding of removal, an alien must show a clear probability his life or freedom would be threatened if returned to a specific country because of his race, religion, nationality, membership in a particular social group, or political opinion. Mompongo v. Gonzales, 406 F.3d 512, 514 (8th Cir. 2005) (citing 8 U.S.C. § 1231(b)(3)(A)). Said another way, "an alien must prove it is more likely than not that he will be persecuted if returned to the country of removal." "Persecution is the 'infliction or threat of death, torture, or injury to one's person or freedom, on account of' a protected characteristic. Madjakpor v. Gonzales, 406 F.3d 1040, 1044 (8th Cir. 2005) (quoting Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002)).

We review the BIA's determination of Salkeld not being eligible for withholding of removal under the substantial evidence standard. Id. (citing Ismail, 396 F.3d at 974). Under this standard of review, we will affirm the denial of the withholding unless no reasonable factfinder could fail to find the requisite fear of persecution. Id.

In view of the extremely deferential standard of review, we hold the BIA's decision of Salkeld failing to demonstrate a clear probability of persecution based on his homosexuality was supported by substantial evidence. We recognize, as we must, evidence exists in the record to support Salkeld's alleged fear of persecution, but we cannot say it is so compelling the IJ could not reasonably arrive at the decision reached. Persecution is an extreme concept and much of the harassment and intimidation of which Salkeld complains, while serious, does not rise to the level of persecution. Zakirov v. Ashcroft, 384 F.3d 541, 546 (8th Cir. 2004) ("Low-level intimidation and harassment alone do not rise to the level of persecution."). The record contains evidence of some alarming instances of violence towards homosexuals, but these instances are relatively sporadic, and homosexuality is not penalized by the Peruvian government. Indeed, Peru does not have laws prohibiting homosexuality and there are no requirements for homosexuals to register themselves. Salkeld admits he was never physically abused in Peru because of his suspected homosexuality. Moreover, the record shows, like the United States, where some areas of our country are more hospitable to homosexuals than other areas, Peru has some locations in which homosexuals may live more safely. We are therefore satisfied the BIA's denial of withholding of removal is supported by substantial evidence in the record.

B

Salkeld also argues the IJ's denial of his request to continue removal proceedings violated his constitutional right to due process of law. See U.S. Const.

-7-

Amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."). He contends the denial of the continuance rendered his hearing fundamentally unfair because it prevented him from obtaining new counsel and developing additional evidence. See Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004) ("The Fifth Amendment's due process clause mandates that removal hearings be fundamentally fair.").

As a preliminary matter, we address whether we have jurisdiction to consider Salkeld's claim. As the government notes, generally, we lack jurisdiction to review the discretionary denial of a motion to continue removal proceedings. See Sidikhouya v. Gonzales, 407 F.3d 950, 952 (8th Cir. 2005) (per curiam) (citing Onyinkwa v. Ashcroft, 376 F.3d 797, 798 (8th Cir. 2004)); see also 8 U.S.C. § 1252(a)(2)(B)(ii). Pursuant to the REAL ID Act of 2005, however, we retain jurisdiction to review constitutional claims and questions of law. See Grass v. Gonzales, No. 04-1115, slip op. at 3 (8th Cir. Aug. 12, 2005) (citing 8 U.S.C. § 1252(a)(2)(D)).[2]

Moving to the substance of his claim, we find no constitutional violation. There was nothing fundamentally unfair or procedurally irregular about the removal proceeding. See Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir. 2003) ("To demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice."). Four hours had been set aside for the hearing, for which he and his lawyer had over a year to prepare. Although no longer represented by legal counsel of his choice, he was represented by

---

[2]Congress explicitly made the REAL ID Act's provisions applicable to all "cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment. . . ." Pub. L. No. 109-13, § 106(b), 119 Stat. 231, 310 (2005). We therefore apply it to the present petition for review. Fernandez-Ruiz v. Gonzales, 410 F.3d 585, 587 (9th Cir. 2005).

a lawyer well versed with his claim. All of his proffered documentary evidence was admitted and he and his expert witness were allowed to testify on his behalf.

Salkeld's principle complaint is that the denial violated his right to due process by preventing him from securing new counsel to pursue evidence from Peruvian homosexuals with first-hand knowledge of the persecution. Had this denial been arbitrary, perhaps we would agree with Salkeld. Due process prohibits an IJ from arbitrarily denying a continuance, White v. Lockhart, 857 F.2d 1218, 1220 (8th Cir. 1988), but it does not require an IJ to grant a continuance at a party's whim. The IJ made his final decision after listening to arguments from both Salkeld and his lawyer and based it on his concern for judicial economy. A continuance may have postponed the hearing another year, and the in-court continuance request could have been avoided had the appropriate action been taken earlier. By his own admission, Salkeld knew of his counsel's decision not to pursue the witnesses one week before the merits hearing, but did not contact another lawyer until an hour before the hearing. In addition, Salkeld makes no showing the witnesses would have offered probative testimony materially different from what the IJ already had before him. Lopez, 332 F.3d at 512 ("To demonstrate a violation of due process, an alien must demonstrate . . . that the error resulted in prejudice."). Under these circumstances, we cannot say the IJ committed constitutional error in denying the motion for continuance.

III

We deny the petition for review.

_____