# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2716

_____

William Johnathan Kimumwe,     *
                         *
        Petitioner,          *
                         *    Petition of Review from the Board
    v.                          *    of Immigration Appeals.
                         *
Alberto Gonzales,[1] Attorney General     *
of the United States,           *
                         *
        Respondent.         *

_____

Submitted: September 16, 2005
Filed: December 13, 2005

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

William Kimumwe petitions for review of a decision of an Immigration Judge denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. We conclude that the IJ's determination was within the range of decisions available to a reasonable adjudicator, and we therefore deny the petition for review.

_____

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c).

I.

Kimumwe is a native of Zimbabwe who fled his country in March 2002. He alleges that he is a homosexual, and that he left Zimbabwe on account of the government's intolerance of homosexuality. Kimumwe contends that he suffered past persecution by the Zimbabwean government, and that he has a well-founded fear that he would be persecuted if he were returned.

In support of his claim regarding past persecution, Kimumwe described several incidents from his youth in Zimbabwe. He explained that while attending secondary school in 1995 at age 12, he had sexual relations with another boy his age. Kimumwe admitted that he "lured" the other student into participating in sexual activity, and acknowledged that the other student may not have been gay. The school's policy prohibited sexual activity of any kind, and Kimumwe was expelled from school as a result of the incident.

In 1998, while attending the College of Bulawayo, Kimumwe invited a fellow student to his room for drinks, during which time the two men became drunk and engaged in sexual activity. The second student reported the incident to college authorities, who in turn reported it to police, and Kimumwe was arrested. Police detained Kimumwe for two months, but did not charge him with a criminal offense. Kimumwe testified that he was accused of getting the other boy drunk, and then having sex with him, although Kimumwe also stated that a jailer later told him that he was detained because he was gay. No physical abuse occurred in the jail.

Kimumwe was released from jail when the head of the orphanage where he was raised bribed prison officials. Police gave Kimumwe an unofficial document which stated that charges against him had been dismissed, and he testified to no further problems with authorities after his release. President Robert Mugabe of Zimbabwe declared homosexuality illegal in 1998, and in December 1998, after Mugabe made

further anti-homosexual pronouncements, Kimumwe left Zimbabwe for Kenya. Kimumwe later left Kenya for the United States with the assistance of the Gay & Lesbians of Zimbabwe organization.

Kimumwe entered the United States in 2002, and eventually applied for asylum, withholding of removal, and protection under the CAT. In rejecting his claims, the IJ reasoned that homosexual orientation may qualify as a "particular social group" for purposes of determining whether an alien is a "refugee," *see* 8 U.S.C. 1101(a)(42); *Matter of Toboso-Alfonso*, 20 I. & N. Dec. 819, 822 (B.I.A. 1990), but concluded that Kimumwe's problems with authorities in Zimbabwe "were not based simply on his sexual orientation, but instead resulted [from] his engaging in prohibited sexual conduct." The IJ recognized that the President of Zimbabwe is not tolerant of homosexuals and has expressed disdain for them, but the IJ found these official pronouncements – without any accompanying evidence of persecution based solely on homosexual status – insufficient to establish a well-founded fear of future persecution. The IJ also stated that Kimumwe had presented no objective evidence to confirm his homosexuality. Having found insufficient evidence on the asylum claim, the IJ concluded that Kimumwe also failed to meet the more stringent requirements for withholding of removal and protection under the CAT. The BIA affirmed without opinion.

II.

Kimumwe's first claim is that the IJ erred in denying his application for asylum. The Attorney General has discretion to grant asylum to an alien who is unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see* 8 U.S.C. § 1158(b). Generally speaking, "[p]ersecution is the infliction or threat of death, torture, or injury to one's person or freedom, on account of a protected

characteristic." *Salkeld v. Gonzales*, 420 F.3d 804, 808-09 (8th Cir. 2005) (internal quotations omitted). We review the BIA's determinations under the "substantial evidence" standard, which, in this context, means that we uphold the agency's decision unless any reasonable fact-finder would be compelled to conclude that Kimumwe demonstrated the requisite fear of persecution. *See* 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2004). Because the BIA affirmed the IJ's decision without opinion, we treat the IJ's conclusions as those of the agency. 8 C.F.R. § 1003.1(e)(4); *see Dominguez v. Ashcroft*, 336 F.3d 678, 679 n.1 (8th Cir. 2003).

Kimumwe argues that he satisfied his burden of showing a well-founded fear of future persecution, based largely on past persecution in Zimbabwe. *See* 8 C.F.R. § 208.13(b)(1). He contends that he is a homosexual, and that his expulsion from secondary school in 1995 and his arrest and detention in 1998 while attending the College of Bulawayo are evidence of past persecution based on his membership in a particular social group. The IJ concluded, however, that the actions of Zimbabwean authorities in these instances were not based on Kimumwe's sexual orientation, but rather on Kimumwe's involvement in prohibited sexual conduct.

As to the secondary school, there was evidence in the record that Kimumwe, at age 12, "lured" a student into sexual activity, and was expelled from the school on that basis. Kimumwe testified that it was a violation of school policy for students to have sex with each other, that he would have been expelled for having sex with *either a boy or a girl* because "it was illegal to have sex," and that he admitted at the time to luring another boy, who was not gay, into having sexual intercourse. (R. 153-54). Expulsion of a boy from school under these circumstances does not support, much less compel, a finding of persecution on the basis of homosexual status.

Kimumwe testified that while attending college, he fell in love with a 16-year-old boy who "had love for girls" and was not gay, but Kimumwe thought he "could change him," and could make him interested in homosexual sex. (R. 155). Kimumwe admitted that "one time I got him drunk in my room and slept with him," stating that "he drank my drinks and he got drunk so . . . I was responsible for that." (R. 155-56). The next day, the other student said that Kimumwe "had done something wrong to him" by engaging in sexual activity, and reported the incident to school officials. (R. 157). Kimumwe was arrested, and he testified inconsistently about the circumstances, saying at one point that the police said "it's illegal to be gay in public," but on further examination stating that they "they didn't tell me why they were taking me." (R. 158-59). After a bribe resulted in Kimumwe's release, police gave him a letter stating that he had been charged with sodomy and sexual assault, but was released due to a lack of evidence. (R. 160). Again, we believe a reasonable adjudicator could conclude that the government's action in this instance was based not on Kimumwe's homosexual status, but on allegations of sexual misconduct, even assuming that the sanction was extreme enough to constitute "persecution" and that homosexual status is a "particular social group" for purposes of the governing statute. *See Molathwa v. Ashcroft*, 390 F.3d 551, 554 (8th Cir. 2004).

Kimumwe also testified that on various occasions while in Zimbabwe, local authorities harassed him by chasing him and making disparaging remarks, neighbors spat on him, kicked him, and threw stones at him, and that on one occasion, he was beaten by villagers and shocked with an electric wire while on his way to visit a friend. Harassment by local authorities of the sort described, however, does not rise to the level of persecution. *See Salkeld*, 420 F.3d at 808-09. Actions by private parties are not attributable to the government, absent a showing that the harm is inflicted by persons that the government is unwilling or unable to control, *see Valioukevitch v. INS*, 251 F.3d 747, 749 (8th Cir. 2001), and we conclude that the IJ reasonably declined to find on this record that the incidents involving neighbors and villagers described by Kimumwe amounted to persecution by official authorities.

Kimumwe also asserts that he has a well-founded fear of future persecution because of the announced hostility of the Zimbabwean government to homosexuality. As the IJ observed, however, Kimumwe's only encounter with police occurred when he was accused of coercing another student to participate in sexual activity, and the police eventually provided him with a document that assisted in avoiding future harassment by local authorities. Although the government has stated its disapproval of homosexuality and espoused harsh anti-homosexual rhetoric, "persecution is an extreme concept," typically requiring the infliction or threat of death, torture, or injury to one's person or freedom, *Salkeld*, 420 F.3d at 808-09, and the evidence here did not compel a finding that a homosexual returned to Zimbabwe has a well-founded fear that he would be subjected to such serious mistreatment. While the State Department's Country Report on Human Rights Practices for 2001 noted "numerous, serious abuses" by the government, it did so in the context of a government-sanctioned campaign that targeted political opposition, not persons of homosexual status. (R. 215). Thus, assuming that Kimumwe is a member of a "particular social group," the IJ reasonably concluded that he did not have a well-founded fear of persecution on that basis.

Because Kimumwe failed to satisfy the burden of proof on his asylum claim, his claims for withholding of removal and for protection under the CAT (which is also based on his asserted homosexual status) fail as well. *Regalado-Garcia v. INS*, 305 F.3d 784, 788 (8th Cir. 2002); *Samedov v. Gonzales*, 422 F.3d 704, 708 (8th Cir. 2005). We decline to consider Kimumwe's contentions that he was denied due process in the hearing before the Immigration Judge, because he failed to present those issues in an appeal to the BIA. 8 U.S.C. 1252(d)(1); *Etchu-Njang v. Ashcroft*, 403 F.3d 577, 583-84 (8th Cir. 2005).

The petition for review is denied.

HEANEY, Circuit Judge, dissenting.

I cannot agree with the majority that William Kimumwe has not experienced past persecution on account of his sexual orientation, nor can I accept that he has no well-founded fear of being persecuted in the future on account of his sexual orientation[2] if returned to Zimbabwe. Thus, I respectfully dissent.

The IJ's conclusion that Kimumwe has not established eligibility for asylum is simply not supported by the record. At the outset, I take issue with the IJ's statement that Kimumwe presented no objective evidence to confirm his homosexuality. It is unclear what type of evidence would satisfy the IJ. Kimumwe testified he was openly gay. He stated he realized he was gay when he was seven years old. He presented a letter from a Kenyan orphanage administrator, Kemba Andrew Waakl, indicating that Kimumwe was gay. After carefully perusing the record, I have found no evidence whatsoever that would contradict Kimumwe's claimed sexual orientation and accept that he is openly gay.

The IJ next discounted Kimumwe's evidence of persecution, opining that Kimumwe "was not punished because of his status as a homosexual, but rather because of the apparently coercive circumstances in which he engaged in sexual activity." (R. at 78.) This is a mischaracterization of the record. When Kimumwe was twelve, he engaged in his first homosexual experience at school with a classmate.

_____

[2]It is beyond question that a person's sexual orientation may form the basis for a legitimate asylum claim. *Matter of Toboso-Alfonso*, 20 I. & N. Dec. 819, 820-23 (BIA 1990), *adopted as precedent in all future proceedings*, Att'y Gen. Order No. 1895-94 (June 19, 1994); *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1093-94 (9th Cir. 2000) (granting withholding of removal to an alien who established a clear probability of future persecution based on his feminine sexual identity); *Molathwa v. Ashcroft*, 390 F.3d 551, 554 (8th Cir. 2004) ("We will assume, for purposes of Molathwa's appeal, homosexuals are a particular social group eligible for relief.").

School administrators found out and expelled Kimumwe. The IJ emphasized that Kimumwe stated he "lured" the other boy into sexual conduct. Kimumwe explained at the hearing that this meant he convinced the other boy to have sex, not that he coerced the boy.

When Kimumwe was sixteen, he started at the College of Bulawayo on a scholarship to study computer engineering. He became attracted to another male student named Ohomutso. On one occasion, Kimumwe and Ohomutso drank too much and had sex. The next day, people found out, and Ohomutso became ashamed. On the advice of classmates, Ohomutso reported this incident to school administrators, who then called police. Kimumwe was arrested. He asked why he was being arrested, and the police told Kimumwe it was because he was gay, and because it was illegal to be gay in public. Kimumwe was held for two months without any charges filed against him, and without any hearing on his fate. Then the head of Kimumwe's orphanage arrived at the jail and bribed the police officials to release Kimumwe. She asked the officers to give Kimumwe some type of document indicating that he had been released so that he would not be harassed by local authorities. Kimumwe was provided with a handwritten note explaining that he had been released because there was not enough evidence to charge him with sodomy or sexual assault. With regard to this incident, the IJ apparently believed that Kimumwe had taken advantage of Ohomutso by getting him drunk for the purpose of having sex. At the hearing, however, Kimumwe clarified that they were *both* drunk, and that he did not compel Ohomutso to have sex in any way. Importantly, the IJ also overlooked Kimumwe's unrefuted testimony that the officers who arrested him made it clear he was arrested for being gay, not for having sex. Thus, the IJ's finding that Kimumwe had not established past persecution based on his status as an openly gay man is not supported by substantial evidence.

Similarly, Kimumwe presented sufficient evidence that he had a reasonable apprehension that he would be subjected to future persecution if returned to

Zimbabwe. Kimumwe, in referring to the government in his asylum application, stated that "they search for people like me" and kill them. (R. at 323-24.) This is consistent with the exhibits presented in his case. According to State Department reports on country conditions, Zimbabwean President Robert Mugabe has been in power since 1980, and rules a country whose security forces have committed "numerous, serious human rights abuses." (R. at 215.) In 1995, Mugabe publicly referred to gays as "sodomites and perverts" and declared that homosexual people had "no rights at all." (*Id.* at 196.) Mugabe's anti-gay rhetoric became stronger soon thereafter, attacking Britain's tolerance of homosexuals, whom Mugabe believed were "worse than dogs and pigs." (*Id.* at 326.) In speeches, Mugabe has promised that Zimbabwe will do "everything in its power" to combat homosexuality, (*id.*), and has described homosexual relations as "an abomination and decadence," (*id.* at 270). Mugabe remains in power today.

Our court ought not sanction the return of an openly gay man to a country whose leader has vowed to rid the country of homosexuals. Zimbabwe's government's past conduct, both generally and with specific reference to Kimumwe, indicates an intent to further persecute him on the basis of his sexual orientation. Kimumwe has established that he has suffered past persecution and has a reasonable fear of future persecution on account of being openly gay. Because I would reverse the IJ's contrary finding, I respectfully dissent.

_____