# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4123

_____

Aureo Sergio Ixtlilco-Morales,           *
                                         *

        Petitioner,            *

                                         *   Petition for Review of an

     v.                        *   Order of the Board of

                                       *   Immigration Appeals.

Peter D. Keisler, Acting Attorney   *
General of the United States       *
of America,[1]                    *
                                       *

        Respondent.         *

_____

Submitted: September 27, 2007
Filed: November 2, 2007

_____

Before BENTON, BOWMAN, and SHEPHERD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Aureo Sergio Ixtlilco-Morales petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT). Morales is a native and citizen of Mexico who alleges that he fears persecution in Mexico based on his homosexuality and HIV-positive status. We deny the petition.

___

[1]Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Peter D. Keisler is substituted for Alberto R. Gonzales as respondent.

Morales was born in Axochiapan, Mexico, in 1976. When he was nine or ten years old, Morales recognized that he was attracted to boys. Around that time, he began, on occasion, dressing in his sisters' clothing and wearing makeup. When Morales's father caught him playing with his sisters or dressing as a female, Morales's father beat him. This occurred weekly or every two weeks. Morales's father also called Morales names and said that he would not accept a homosexual in the family. Morales's mother and a brother also beat him for being a homosexual. On one occasion when Morales was ten years old, Morales's father beat Morales so severely that Morales thought that he would die. Morales's father then threw Morales out of the family house, saying he would never accept a homosexual son and would rather see Morales dead. Morales began working in the produce market in Axochiapan for a woman who allowed Morales to live with her. When Morales would see his father or a brother at the market, he would hide in terror. At eleven years old, Morales left Axochiapan for work in Mexico City. Morales returned to his family's home on two occasions, but his mother rejected him. Morales attempted suicide when he was twelve years old.

In 1994, when Morales was seventeen years old, he illegally entered the United States and settled in Minnesota. He eventually "came out" and began to live openly as a homosexual. Morales was diagnosed with HIV in 2003 and enrolled in an HIV clinical drug trial at the University of Minnesota. Morales applied for asylum, withholding of removal, and CAT relief in November 2003. His application claimed that he feared persecution in Mexico based on his status as a homosexual and a person infected with HIV.

The immigration judge (IJ) determined that Morales was credible and that his HIV diagnosis was a changed circumstance that excused the untimely filing of his asylum application. However, the IJ ultimately denied Morales all relief except

voluntary departure. The IJ determined that the past abuse Morales suffered at the hands of his family did not amount to persecution because it was not inflicted by the government or by actors the government was unable or unwilling to control (Morales never reported the abuse to the authorities). The IJ further concluded that Morales did not have a well-founded fear of future persecution in Mexico because the discrimination faced by homosexuals there does not rise to the level of persecution. Morales timely appealed the IJ's decision to the BIA.

The BIA disagreed with the IJ's decision "insofar as it concluded that the respondent did not establish past persecution because he did not report [the abuse by his family] to authorities and therefore did not establish that the mistreatment was at the hands of those the government would not or could not control." BIA Order at 2. Given Morales's young age at the time of the abuse and evidence in the record showing that domestic abuse of homosexual children is a significant problem in Mexico, the BIA deemed it insignificant that Morales did not report the abuse. Finding past persecution established, the BIA recognized that the regulations establish a presumption that Morales had a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1)(ii). The BIA ruled, however, that the presumption was rebutted by the fact that Morales is no longer a child, which amounts to a fundamental change in circumstances. The BIA went on to rule that Morales did not establish a well-founded fear of future persecution based on his status as an HIV-positive homosexual. While the BIA found "attacks on homosexuals and those with HIV . . . certainly troubling and . . . a legitimate concern," it determined that such attacks "have not been so numerous or so widespread as to support a claim that the respondent has a well-founded fear of persecution." BIA Order at 3. To the extent that Morales's claim was based on a lack of medical care for HIV-positive persons in Mexico, the BIA determined that Morales did not establish that the lack of care was an attempt to persecute homosexuals or those with HIV. Thus, the BIA concluded that Morales was not eligible for asylum or withholding of removal and similarly was not eligible for relief under the CAT.

II.

In reviewing the BIA's decision denying Morales's request for asylum, withholding of removal, and CAT protection, we consider questions of law de novo and accord substantial deference to the agency's interpretations of the statutes and regulations that it administers. Bushira v. Gonzales, 442 F.3d 626, 630 (8th Cir. 2006). We review the BIA's factual findings under the substantial evidence standard and must uphold the BIA's decision if, based on the record as a whole, it is supported by "'reasonable, substantial, and probative evidence.'" Perinpanathan v. INS, 310 F.3d 594, 597 (8th Cir. 2002) (quoting Kratchmarov v. Heston, 172 F.3d 551, 554 (8th Cir. 1999)). We will not overturn the BIA's decision unless Morales demonstrates that "'the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.'" Id. (quoting Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997)).

The Immigration and Naturalization Act gives the Attorney General discretion to grant asylum to an individual who is a "refugee." 8 U.S.C. § 1158(b)(1). A refugee is defined by the Act as an alien who is unwilling or unable to return to his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). A well-founded fear is one that is both "subjectively genuine and objectively reasonable." Ghasemimehr v. INS, 7 F.3d 1389, 1390 (8th Cir. 1993) (per curiam). "Persecution is the infliction or threat of death, torture, or injury to one's person or freedom, on account of [a protected characteristic]." Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002). "Low-level intimidation and harassment alone do not rise to the level of persecution." Makatengkeng v. Gonzales, 495 F.3d 876, 882 (8th Cir. 2007) (quotation and citation omitted). Proof of past persecution entitles an applicant to a presumption that he has a well-founded fear of future persecution on the same basis. 8 C.F.R. § 1208.13(b)(1). In this situation, the burden shifts to the government to show either that there has been

a "fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" on account of a protected characteristic, or that the applicant could avoid future persecution by relocating to another area of his native country and it would be reasonable for the applicant to do so. Id. § 1208.13(b)(1)(i),(ii).

## III.

On appeal, Morales argues that the BIA committed a number of errors in determining that the presumption of a well-founded fear of future persecution was rebutted by a fundamental change in circumstances. First, Morales asserts that the BIA erroneously engaged in fact finding when it recognized that Morales is no longer a child. According to Morales, the BIA did not have the authority to determine that Morales's status as an adult was a changed circumstance that rebutted Morales's fear of future persecution. We disagree. Morales's age was an undisputed fact that was set out in the IJ's opinion. The BIA was not required to find facts when it concluded that Morales's age (or rather, age progression) constituted a fundamental change in circumstances that rebutted his fear of persecution based on abuse by his family when he was a boy. The BIA had the authority to review de novo the IJ's discretionary determination as to whether Morales was eligible for asylum. See id. § 1003.1(d)(3)(ii) ("The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*.")

Second, Morales argues that the BIA applied an improper legal standard in determining that his age progression was a fundamental change in circumstances that could rebut his fear of future persecution. Specifically, Morales contends that the term "fundamental change in circumstances," id. § 1208.13(b)(1)(i)(A), can only refer to changes in country conditions, not changes in an applicant's personal circumstances. This limited reading of the regulation is incorrect. While it is certainly true that changed country conditions may constitute a fundamental change in circumstances (as

recognized in the cases cited in Morales's brief), we have found no law suggesting that country conditions are the exclusive type of "circumstances" envisioned by the regulation. The text of 8 C.F.R. § 1208.13(b)(1)(i)(A) speaks broadly of a "fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution," and there is no indication that the drafters intended to exclude changes in an applicant's personal situation as a means of rebutting the presumption of a well-founded fear of persecution. In fact, a discussion in the Federal Register specifically notes that the opposite is true: "By adopting that language [requiring a showing of a 'fundamental change in circumstances'] rather than that [language] requiring a showing of changed country conditions to overcome the presumption, other changes in the circumstances surrounding the asylum claim, *including a fundamental change in personal circumstances*, may be considered . . . ." Asylum Procedures, 65 Fed. Reg. 76,121, 76,127 (Dec. 6, 2000) (emphasis added); see also id. (noting that the amendments to 8 C.F.R. § 208.13(b)(1) "change the regulation[] to the extent that the presumption may be overcome by events other than a change in country conditions").[2] The BIA did not commit legal error by considering whether the change in Morales's personal circumstances rebutted the presumption of a well-founded fear of future persecution.

Third, Morales asserts that the BIA, after finding past persecution, did not properly shift the burden to the government to rebut the presumption of a well-founded fear of future persecution. We disagree. The BIA specifically recognized the presumption in Morales's favor, but concluded that "the record establishes a fundamental change in circumstances such that the respondent no longer has a well-founded fear based upon his claim of past mistreatment." BIA Order at 2. The BIA

---

[2]As a result of the enactment of the Homeland Security Act of 2002, 8 C.F.R. Part 208 was duplicated at 8 C.F.R. Part 1208, which applies to actions by the BIA. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9826 (Feb. 28, 2003).

determined that as an adult, Morales would not be subject to the persecution that he suffered in the past: significant harm inflicted by his family members. Thus, the BIA deemed the presumption rebutted.[3] Only then did the BIA shift the burden back to Morales to prove that he feared future persecution for a different reason. Placing the burden of proof on Morales at that point was proper. See Abrha v. Gonzales, 433 F.3d 1072, 1075 (8th Cir. 2006) ("This presumption may be rebutted, however, if the respondent shows by a preponderance of the evidence that there is no longer a reasonable fear of future persecution, 8 C.F.R. § 1208.13(b)(1)(i)(A), in which case the burden reverts back to the alien."); see also 8 C.F.R. § 1208.13(b)(1) ("If the applicant's fear of future persecution is unrelated to the past persecution, the applicant bears the burden of establishing that the fear is well-founded.").

Finally, within the arguments discussed above, Morales seems to make the broader argument that the BIA erred in rejecting his asylum application to the extent that the application was based on his fear of future persecution in Mexico because of his status as an openly homosexual adult with HIV. The BIA recognized that attacks on homosexuals and those with HIV occur in Mexico, but concluded that such attacks are not so numerous or so widespread as to support a claim that Morales has a well-founded fear of persecution. The BIA further concluded that Morales failed to establish that inadequacies in health care for HIV-positive individuals in Mexico was an attempt to persecute those with HIV. Our review of the record convinces us that these conclusions are supported by substantial evidence; we cannot say that "'the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.'" Perinpanathan, 310 F.3d at 597 (quoting Feleke, 118 F.3d at 598); see also Salkeld v. Gonzales, 420 F.3d 804, 809 (8th Cir. 2005) (holding that evidence of police harassment of homosexuals and "alarming instances of

_____

[3]Morales also attacks a portion of the IJ's decision suggesting that Morales could avoid future persecution by relocating within Mexico. Our review, however, is of the BIA's order, not the decision of the IJ. The BIA's decision was not based on the possibility of Morales's relocation.

violence towards homosexuals" in Peru did not compel a finding that alien demonstrated a clear probability of persecution if returned to Peru; noting that Peru does not have laws prohibiting homosexuality or requiring homosexuals to "register themselves"); Kimumwe v. Gonzales, 431 F.3d 319, 323 (8th Cir. 2005) (holding that evidence that Zimbabwean government openly disapproved of homosexuality and espoused harsh anti-homosexual rhetoric did not compel a finding that alien had a well-founded fear of persecution if returned to Zimbabwe).

## IV.

Morales argues in the alternative that even if he does not have a well-founded fear of future persecution, the BIA should have granted him so-called "humanitarian asylum" based on the severity of his past persecution. See 8 C.F.R. § 1208.13(b)(1)(iii)(A). Morales did not assert this claim before the IJ or the BIA; he raises it for the first time in this appeal. "Failure to raise an issue before the agency constitutes a failure to exhaust administrative remedies and deprives this court of jurisdiction to hear the matter." Sultani v. Gonzales, 455 F.3d 878, 884 (8th Cir. 2006); see also 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right . . . ."). We therefore will not consider this claim.[4]

---

[4]We note, in any event, that the past persecution suffered by Morales does not rise to the level of atrocity required to support a humanitarian asylum claim. See Cigaran v. Heston, 159 F.3d 355, 358 (8th Cir. 1998) ("'Humanitarian asylum' has been reserved for those cases in which the past persecution suffered has been particularly atrocious."). While a humanitarian asylum claim may also be based on a showing that the alien will suffer "other serious harm upon removal," 8 C.F.R. § 1208.13(b)(1)(iii)(B), "other serious harm" is defined as harm equal in severity to persecution but not inflicted on account of one of the five asylum grounds. Asylum Procedures, 65 Fed. Reg. at 76,127; Krastev v. INS, 292 F.3d 1268, 1271 (10th Cir. 2002). Morales alleges fear based on one of the five asylum grounds—membership in a particular social group (HIV-positive homosexuals)—which necessarily precludes this avenue of relief.

## V.

Finally, Morales asserts that the BIA erred in denying his claims for withholding of removal and relief under the CAT. Morales contends that "[a]s a homosexual infected with HIV, Morales will more likely than not suffer persecution and torture in Mexico." Petitioner's Opening Br. at 37; see also Madjakpor v. Gonzales, 406 F.3d 1040, 1044 (8th Cir. 2005) (ruling that withholding of removal shall be granted if an alien proves "that it is more likely than not that he will be persecuted if returned to the country of removal"); 8 C.F.R. § 1208.16(c)(2) (stating that CAT relief is available if an alien proves "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal"). As Morales presented the same factual basis for all three of his claims and failed to meet the least demanding burden of proof for the asylum claim, his claims for withholding of removal and protection under the CAT likewise fail. See Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005); Kimumwe 431 F.3d at 323.

## VI.

The petition for review is denied.

_____