# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2539
_____

Belsy Lucila Coto-Albarenga

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: April 13, 2021
Filed: July 12, 2021
_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.
_____

SMITH, Chief Judge.

Belsy Coto-Albarenga ("Coto") entered the United States in 2014 without proper documentation. The Department of Homeland Security initiated removal proceedings against her. She conceded removability but sought asylum, withholding of removal, and relief under the Convention Against Torture. After a hearing, the immigration judge (IJ) found that Coto's testimony was not credible and thus denied

her relief from removal. The Board of Immigration Appeals ("Board") affirmed the IJ's decision. Coto petitions this court for review. We deny the petition.

## I. *Background*

In 2014, Coto left Honduras and entered the United States through a port of entry. An asylum officer conducted a credible-fear interview. In the interview, Coto represented that she was fleeing an abusive boyfriend named Mayki. Eventually, the Department of Homeland Security initiated removal proceedings against Coto. In turn, Coto sought asylum, withholding of removal, and relief under the Convention Against Torture. The IJ held a hearing in 2017 regarding Coto's application. Coto testified at the hearing and presented documentary evidence, including her credible-fear worksheet from 2014; her I-589 asylum application, which she signed before the IJ; sworn personal statements from 2015 and 2017; medical records regarding her prior pregnancies; and a letter of support from her mother, who still lives in Honduras. Her testimony and documentary evidence provided the following details.

At some point in the mid-2000s, Coto began a relationship with a man named Mayki. In Coto's testimony and 2017 sworn statement, she said that the relationship began in 2004 soon after her son was born. But in her 2014 credible-fear interview, 2015 sworn statement, and I-589 application, she said that she and Mayki began a relationship in 2006. And in her 2017 sworn statement, Coto mentioned for the first time that she learned that Mayki was a member of a drug cartel after their relationship began.

Coto and Mayki might have lived together during their relationship. In her 2014 credible-fear interview and her I-589 application, Coto asserted that she and Mayki lived together from 2006 until she left Honduras in 2014. At the hearing, however, she testified inconsistently. First, she said that she lived alone for the nine years before coming to the United States, which would have been from 2005 to 2014.

Later, she testified that she lived with Mayki from 2004 to 2008. Then, she claimed that Mayki never lived with her but only visited her a couple of days each month.

Around 2009, Mayki began verbally, physically, and sexually abusing Coto. In her credible-fear interview, Coto claimed that Mayki began abusing her because she wanted to leave him for mistreating her. But in her 2015 and 2017 sworn statements and at the hearing, she stated that Mayki began abusing her because she became pregnant with his child.

Coto said Mayki abused her a couple of times a month or every day. In her 2017 sworn statement, Coto asserted that Mayki would beat her regularly and rape her almost every day. She repeated this timeline during the beginning of her testimony but altered the frequency of abuse after admitting that she only saw Mayki a couple of times each month.

According to Coto, she became pregnant three times with Mayki's children, but Mayki's abuse caused all three pregnancies to miscarry. She consistently asserted this, from her entry into the United States until her hearing with the IJ. But the letter of support from Coto's mother indicated that only Coto's first pregnancy with Mayki's child miscarried, though Coto claimed that her mother knew about all three pregnancies. Additionally, the medical evidence that Coto submitted indicated that her second pregnancy with Mayki's child did not end in a miscarriage as she consistently claimed. Instead, the medical records indicated that the child was born alive after the 38th week of pregnancy but died soon after birth.

Coto mentioned some events and information for the first time at the hearing. First, Coto testified that Mayki would often come to her house at odd hours and shoot a gun at her windows and the ground to wake her up. Although she had not described these incidents anywhere in the record, she had mentioned in the 2015 sworn

statement that Mayki had held a gun to her head. Second, she told the IJ of an incident where she and Mayki were ambushed by gang members while driving.

Additionally, the letter of support from Coto's mother omitted any threats to the mother's life, even though Coto claimed that Mayki threatened her mother's life by holding a gun to her mother's head. And Coto was often nonresponsive to the questions she was asked during the hearing, providing meandering narratives to yes-or-no questions.

The IJ concluded that Coto's testimony was not credible because she had provided inconsistent testimony. The IJ also concluded that her documentary evidence contradicted many points of her oral testimony and had not otherwise corroborated her testimony. Thus, the IJ denied Coto's requests for asylum, withholding of removal, and relief under the Convention Against Torture. Coto appealed to the Board. The Board upheld the IJ's decision because it was not clearly erroneous. Coto now petitions this court for review of the agency decision.

II. *Discussion*

On appeal, Coto challenges the agency's credibility determination. In this case, we review the Board's and the IJ's decisions together. *Arevalo-Cortez v. Lynch*, 829 F.3d 1022, 1026 (8th Cir. 2016). The agency's credibility determination is a finding of fact, which we review for substantial evidence. *Garcia v. Barr*, 954 F.3d 1095, 1097 (8th Cir. 2020). We only reverse under the substantial-evidence standard when "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting *Singh v. Gonzales*, 495 F.3d 553, 556 (8th Cir. 2007)). We accord such great weight to the IJ's determination "because the IJ sees the witness testify and is therefore in the best position to determine [the asylum seeker's] credibility." *Arevalo-Cortez*, 829 F.3d at 1026 (quoting *Fofanah v. Gonzales*, 447 F.3d 1037, 1040 (8th Cir. 2006)). Even so, the IJ's determination must be "supported by 'specific, cogent reasons for disbelief.'" *Ali v. Holder*, 776 F.3d 522, 526 (8th Cir. 2015) (quoting

*Onsongo v. Gonzales*, 457 F.3d 849, 852 (8th Cir. 2006)). But this means only that the IJ's reasons must be "specific enough that a reviewing court can appreciate the reasoning behind the decision and perform the requisite judicial review," and "cogent" enough that "a reasonable adjudicator would not be compelled to reach a contrary conclusion." *Singh*, 495 F.3d at 557–58.

The IJ's determination may be based on, among other factors, the asylum seeker's

> demeanor, candor, or responsiveness . . . , the inherent plausibility of the . . . account, the consistency between the [asylum seeker's] written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements . . . .

8 U.S.C. § 1158(b)(1)(B)(iii). Further, the IJ may consider these factors "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id.*

There is substantial evidence to support the agency's specific, cogent reasoning for its credibility determination. First, the IJ identified Coto's inconsistency regarding the year her relationship with Mayki began. Second, the IJ pointed to Coto's contradictions about her living arrangements with Mayki. Third, the IJ noted Coto's omission, until the hearing, of Mayki shooting at her house. Fourth, the IJ mentioned Coto's failure to describe, until the hearing, the gang ambush. Fifth, the IJ cited Coto's failure to indicate, until the hearing, that Mayki was a member of a gang. Sixth, the IJ noted that Coto's mother's letter of support mentioned only one pregnancy and did not mention any threat from Mayki, though Coto said her mother knew about all the pregnancies and that Mayki had threatened her mother. Seventh, the IJ detailed the discrepancies between Coto's statements and the medical records

she submitted.[1] And eighth, the IJ determined that Coto was nonresponsive to the question asked of her during the hearing.

Coto challenges the agency's "credibility determination by offering plausible alternate explanations for the IJ's concerns regarding" the inconsistencies between her testimony and documentary evidence. *Arevalo-Cortez*, 829 F.3d at 1026. Specifically, she urges that some of her earlier statements were made either pro se or with an incompetent attorney, she was nervous and gave conflicting answers, some inconsistences were irrelevant to her asylum claim, and some apparent contradictions were not truly contradictions. "While these explanations may seem plausible, we are not free to reverse merely for this reason." *Ismail v. Ashcroft*, 396 F.3d 970, 974 (8th Cir. 2005).

Here, the IJ articulated specific, cogent reasons for concluding that Coto was not credible. And those reasons are supported by substantial evidence.

III. *Conclusion*

We deny Coto's petition for review.

————————————————

---

[1]Coto is correct that the IJ misinterpreted some of the medical records when determining when Coto's second pregnancy with Mayki's child ended. But this was not the only discrepancy that the IJ noted. Coto also claimed that her second pregnancy ended in a miscarriage, but the medical records indicate that the child was born alive.