Henny Andryani HALIM, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 03–70133.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 2004.

Decided Sept. 8, 2004.

Robert G. Ryan, Law Offices of Eugene C. Wong, P.C., San Francisco, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Richard M. Evans, Esq., Michael T. Dougherty, U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: SCHROEDER, Chief Judge, TASHIMA, and RAWLINSON, Circuit Judges.

MEMORANDUM *

Henny Andryani Halim, a native and citizen of Indonesia, petitions for review of the Board of Immigration Appeals' ("BIA") decision summarily affirming the immigration judge's ("IJ") denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Halim contends that she suffered past persecution in Indonesia and that as an ethnic Chinese Christian woman she has a well-founded fear of future persecution if she were returned to that country. We have jurisdiction pursuant to 8 U.S.C. § 1252, and deny the petition.[1]

Where, as here, the BIA streamlines its review of the IJ's decision, we review the IJ's decision as the agency's final action. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir.2003). We review the IJ's denial of asylum, withholding, and CAT relief under the substantial evidence standard. *See Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir.2001); *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir.2003). The denial must be upheld unless Halim can show that "the evidence [she] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

## I. Past Persecution

 Halim relies on two incidents to show past persecution: (1) in 1992, native Indonesian teenagers robbed Halim in an alley, touched her offensively on her breasts and buttocks, and used ethnic slurs to insult her; and (2) in 2000, Halim and her family were robbed at a Chinese restaurant by native Indonesian men who threatened the patrons by saying: "[Y]ou Chinese, give us all your belonging[s], your money, your jewelry or [we will] kill you."

We have described persecution as "an extreme concept that does not include every sort of treatment [that] our society regards as offensive." *Gormley v. Ashcroft*, 364 F.3d 1172, 1176 (9th Cir.2004) (internal quotation marks and citation omitted). Here, substantial evidence supports the IJ's finding that Halim did not suffer past persecution; rather, she was the victim of disturbing, but random, crime. *See id.* at 1177 ("Random, isolated criminal acts perpetrated by anonymous thieves do not establish persecution.") (citation omitted).

First, although the 1992 incident in the alley had a racial and sexual component, the evidence supports the IJ's finding that Halim being attacked while walking alone, late at night in an alley, was not persecution, but instead was a situation where Halim was "in the wrong place at the wrong time." Second, while the robbery in 2000 occurred at a Chinese restaurant

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Cir. R. 36–3.

1. Because the parties are familiar with the facts, we do not recite them here except as necessary to aid in understanding this disposition.

and the robbers referred to the victims as "you Chinese," the IJ reasonably found that Halim offered no evidence to compel a finding that Halim was not a random victim of crime.

We agree with the IJ's conclusion that these are "the kinds of incidents that happen in probably every country in the world between one ethnic group and another." Thus, we conclude that substantial evidence supports the IJ's finding that the two incidents recounted by Halim do not constitute the type of extreme mistreatment that rises to the level of persecution.

## II. Well–Founded Fear of Future Persecution

■ While Halim's fear of persecution "must be based on an individualized rather than generalized risk of persecution, the level of individualized targeting that [she] must show is inversely related to the degree of persecution directed toward ethnic [Chinese Christian women] generally." *Hoxha v. Ashcroft,* 319 F.3d 1179, 1182 (9th Cir.2003). In "extreme situations, . . . [where] members of an entire group . . . *are* systematically persecuted . . . group membership itself subjects the alien to a reasonable possibility of persecution." *Kotasz v. INS,* 31 F.3d 847, 852 (9th Cir.1994) (citing as an example the "systematic attempt to annihilate the Jews in Nazi Germany"). Where past mistreatment does not rise to the level of persecution, and group mistreatment is not systematic, we "will look to (1) the risk level of membership in the group . . . and (2) the alien's individual risk level. . . . The relationship between these two factors is correlational; that is to say, the more serious and widespread the threat of persecution to the group, the less individualized the threat of persecution needs to be." *Avetova–Elisseva v. INS,* 213 F.3d 1192, 1202 (9th Cir.

2000) (quoting *Mgoian v. INS,* 184 F.3d 1029, 1035 n. 4 (9th Cir.1999)).

Here, despite the disturbing history of ethnic tension, the evidence does not compel a finding that, at the time of Halim's hearing, the Indonesian government engaged in, or tolerated, the kind of systematic persecution which would be a "pattern and practice" rendering all ethnic Chinese Christian women in Indonesia eligible for asylum. *See Kotasz,* 31 F.3d at 852. Therefore, Halim must show a particularized risk of future persecution based on her past mistreatment, and the general mistreatment of ethnic Chinese Christian women in Indonesia. *See Avetova–Elisseva,* 213 F.3d at 1202.

The IJ made several findings which demonstrate that she considered both the general risk to ethnic Chinese Christian women, and Halim's particular risk. First, the IJ found "that many people who are Chinese Indonesians have been persecuted over the past number of years in Indonesia based on their ethnicity." The IJ further noted, however, that "reforms are underway [and][t]here has been a tremendous effort to try to attract Chinese investment back to Indonesia." Moreover, the IJ found that the reforms seem to be "working" and that the government is attempting to enforce violations of the law. Thus, the IJ observed that "the farther we get away from the situation that developed in 1998, the harder it is to show that such riots are likely to occur again." Second, the IJ found that there was no evidence "of situations that would be personally threatening to [Halim] were she to return to Indonesia now." The IJ noted that Halim's parents remain in Indonesia, her grandparents feel safe to visit the country, and Halim "herself felt safe to go back less than two years after the riots were at their worst and stayed there for several months . . . and although she had fear, it was not a

strong enough fear to keep her away from the country" in March 2000. The IJ thus concluded that Halim did not objectively hold a well-founded fear of persecution.

Although a reasonable factfinder *could* have found that Halim objectively possesses a well-founded fear of future persecution, we do not believe that a factfinder would be compelled to do so and "[w]e are not permitted to substitute our view of the matter for that of the [agency]." *Prasad v. INS*, 47 F.3d 336, 340 (9th Cir.1995) (citation omitted). There is sufficient evidence to support the IJ's finding that the situation in Indonesia has been improving since the 1998 riots, and that members of Halim's family have been safely living in Indonesia. Moreover, Halim voluntarily returned to Indonesia after the 1998 riots and does not contend that her individualized risk is greater than that of any other ethnic Chinese Christian woman in Indonesia. Given the deferential standard of review, we conclude that substantial evidence supports the IJ's determination that Halim does not objectively hold a well-founded fear of future persecution. Halim is thus not eligible for asylum.

### III. Withholding of Removal and CAT

Because Halim has not qualified for asylum, she necessarily fails to satisfy the more stringent standard for withholding of removal. *See Singh v. INS*, 134 F.3d 962, 971 (9th Cir.1998). Moreover, Halim is not entitled to CAT relief because she did not demonstrate that it is more likely than not that she would be tortured if returned to Indonesia. *See* 8 C.F.R. § 208.16(c)(2); *Zheng*, 332 F.3d at 1194.

Accordingly, Halim's petition for review is

**DENIED.**