**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GREETY MARBUN; CHARLES
TAMPUBOLON; EVANS JOSHUA
TAMPUBOLON; PIETER
DAN TAMPUBOLON,

    Petitioners,

v.

ALBERTO R. GONZALES, Attorney
General,

    Respondent.

No. 05-9519
(No. A95-546-400)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Greety Marbun, her husband, and their two sons, all natives and citizens of Indonesia, seek review of the decision of the Bureau of Immigration Appeals (BIA) to affirm the denial of Dr. Marbun's petition for asylum, restriction on removal, [1] and relief under the United Nations Convention Against Torture (CAT). [2] We take jurisdiction under 8 U.S.C. § 1252(a) and deny the petition for review.

I

Dr. Marbun and her family are Christians, a minority faith in predominantly Muslim Indonesia. Dr. Marbun's husband, Charles Tampubolon,[3] arrived in the United States in November 2000. Dr. Marbun and their sons joined him in April 2001. The family overstayed their non-immigrant visitor visas, and Dr. Marbun filed a petition for asylum and restriction on removal based on religious

---

[1]     "Restriction on removal was known as 'withholding of removal' prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996." *Elzour v. Ashcroft*, 378 F.3d 1143, 1148 n.5 (10th Cir. 2004). We use the newer term "restriction on removal." *See* 8 U.S.C. § 1231(b)(3).

[2]     Petitioners do not make any argument regarding the CAT in their opening brief, and thus they have waived any arguments concerning the denial of relief under the CAT. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994).

[3]     Dr. Marbun's husband is identified variously on appeal and in the record as "Charles Temple Bolin" and "Charles Tampubolon." For purposes of this appeal, we use "Tampubolon," as that is the spelling used in the petition for asylum.

persecution.[4]  Her husband and children did not file separate petitions, but instead were included in Dr. Marbun's petition.

Dr. Marbun and Mr. Tampubolon testified before the immigration judge (IJ) about difficulties they had faced as Christians in Indonesia.  Dr. Marbun described a Muslim attack on her grade school in 1974 and other attacks on her high school, problems that her father faced in building a school that was perceived as a Christian school, her experiences treating victims of the 1998 and 2000 riots in the emergency room at which she worked, her family's experiences during the 1998 riots, and the threats her husband received to force their church to close.  She testified that Christians face limited educational and employment opportunities in Indonesia, but she acknowledged that she had been able to attend college and medical school, earn her medical degree, and secure employment in a government hospital.  She also testified that her parents and four siblings and their families, all Christians, still live in Indonesia.

Mr. Tampubolon testified about his status as an elder in the family's church, the local government's unwillingness to allow his congregation to build a church at a particular location and consequent denial of a permit, the congregation's decision to build a private house and worship there, and how

---

[4]    Dr. Marbun testified that she is of Chinese ethnicity, but the immigration judge (IJ) treated her petition as solely based on religion.  Dr. Marbun does not argue that the IJ erred in not considering any claim based on her ethnicity.

members of the local government visited him and threatened his life if the church did not stop holding worship services at the house. He testified that the congregation then moved among its members' houses to worship until he received more threats requiring the congregation to stop worshiping in private homes. He was threatened about five times between April 2000 and his departure for the United States. He acknowledged that the government had instructed the congregation to hold worship services in permissible locations and that the congregation could seek other locations, such as other churches, but that it would be difficult to obtain space. He testified that a Protestant church across the street from his congregation's house likely was built legally, but it was destroyed and rebuilt two or three times. He also testified that his family is Christian, and that some of his siblings still live in Indonesia while others had moved to Singapore out of fear.

The IJ found petitioners basically credible. But he determined that, while Dr. Marbun and her family had suffered from discrimination and anti-Christian sentiment in Indonesia, the incidents described did not rise to the level of past persecution and that they had not established a well-founded fear of future persecution arising from potential future discrimination. He also concluded that petitioners' congregation, having ceased operations at its former locations, no

longer had anything to fear from the local population or government. The BIA summarily affirmed the IJ's decision.

II

In the case of a summary affirmance, we review the IJ's decision as if it were the decision of the BIA. *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004). "Because [petitioner's] application failed on refugee status, our review is limited, in breadth, to that threshold determination." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003). "Our review is further limited, in depth, to evaluating whether the record on the whole provides substantial support for that determination or, rather, is so decisively to the contrary that a reasonable factfinder would have concluded petitioner is a refugee." *Id.*

## Asylum

To be considered for asylum, Dr. Marbun must prove that she meets the definition of "refugee" – that is, that she faces "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *id.* § 1158(b)(1). "[P]ersecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (quotations omitted). To

-5-

establish refugee status, a petitioner may show she has a well-founded fear of future persecution or demonstrate that she has suffered past persecution, which creates a rebuttable presumption that she has a well-founded fear of future persecution. *See id*. at 1232-33.

Persecution can come from the government or from a non-government group "which the government is unwilling or unable to control." *Vatulev*, 354 F.3d at 1209 (quotation omitted). But "[m]ere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries . . . generally is not sufficient to permit the Attorney General to grant asylum." *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998).

The IJ's decisions that Dr. Marbun did not establish refugee status by demonstrating either a well-founded fear of future persecution or past persecution are supported by substantial evidence. The discrimination and difficulties petitioners have experienced are deplorable, but they do not compel a finding of persecution. *See Tulengkey v. Gonzales*, 425 F.3d 1277, 1280-81 (10th Cir. 2005) (concluding that the incidents of violence supported by the record did not compel a finding of persecution); *Vatulev*, 354 F.3d at 1210 (concluding that incidents of discrimination in education and employment, threats, ethnic slurs, and petty vandalism did not compel a finding of persecution).

Petitioners argue that the IJ did not consider all of the incidents about which they testified because he discussed only three of the events they described. The IJ, however, is not required to discuss every piece of evidence in his decision. *See Hadjimehdigholi v. INS*, 49 F.3d 642, 648, n.2 (10th Cir. 1995). Instead, the IJ must "consider the issues and announce [his] decision in terms sufficient to enable us, as a reviewing court, to perceive that [he] has heard and considered the arguments rather than merely reacted." *Panrit v. INS*, 19 F.3d 544, 545 (10th Cir. 1994). The IJ has done so in this case.

Petitioners also argue that the IJ improperly relied on their congregation's decision to cease operations in the face of threats. They contend that the IJ's holding, that they "do not require protection because they have been forced to abandon their chosen religion," renders asylum law "nugatory." Aplt. Br. at 30-31. Petitioners' argument, however, rests on the conclusion that they were entirely foreclosed from practicing their religion in their local community. The IJ's contrary determination has support in the record, and thus we will not disturb it on appeal.

In sum, "we cannot say the IJ's conclusion that petitioner[s] failed to qualify as . . . refugee[s] is contrary to what a reasonable factfinder would have been compelled to conclude." *Vatulev*, 354 F.3d at 1211.

## Restriction on Removal

To obtain restriction on removal, Dr. Marbun must show that her life or freedom would be threatened in Indonesia because of her race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A). Parsing the statutory language, Dr. Marbun argues that this particular statute does not address persecution, and therefore she does not actually have to show persecution to be entitled to restriction on removal. But our precedent is to the contrary. As we recently reiterated, "[t]he restriction statute is satisfied by a showing that '*it is more likely than not that the alien would be subject to persecution* on one of the specified grounds' upon returning to her country of origin." *Tulengkey*, 425 F.3d at 1280 (quoting *INS v. Stevic*, 467 U.S. 407, 429-30 (1984)) (emphasis added). The standard for restriction on removal is "more demanding" than for an asylum claim. *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004) (quotation omitted). Because Dr. Marbun has not met the standard for asylum, it follows that she has not established entitlement to restriction on removal. *See id.*

III

The record on the whole provides substantial support for the IJ's decision.

Therefore, the petition for review is DENIED.

Entered for the Court


Wade Brorby
Circuit Judge