# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1515

_____

Ming Ming Wijono,

        Petitioner,

    v.

Alberto Gonzales, Attorney General
of the United States of America,

        Respondent.

\*
\*
\*
\*  Petition for Review of an
\*  Order of the Board of
\*  Immigration Appeals.
\*
\*
\*
\*

_____

Submitted: December 16, 2005
Filed: March 8, 2006

_____

Before BYE, BOWMAN, and GRUENDER, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Ming Ming Wijono petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT). Wijono is an Indonesian citizen who alleges that he fears persecution in Indonesia based on his Chinese ethnicity and Christian religion. Because we lack jurisdiction to review the denial of Wijono's application for asylum and conclude that substantial evidence supports the BIA's denial of withholding of removal and relief under the CAT, we deny the petition for review.

I.

Wijono last entered the United States on January 18, 1997, as a nonimmigrant visitor for business. He was authorized to stay in the United States until February 17, 1997, but he remained past that date. On December 7, 2001, Wijono filed an application for asylum, withholding of removal, and protection under the CAT on grounds that he would be persecuted in Indonesia on account of his Chinese ethnicity and Christian religion. On March 22, 2002, the Immigration and Naturalization Service (INS) initiated removal proceedings against Wijono by issuing a Notice to Appear, which charged that Wijono was removable from the United States as an alien who remained in the United States without authorization from the INS after his period of admission had expired. See 8 U.S.C. § 1227(a)(1)(B) (2000).

At a hearing before an immigration judge (IJ), Wijono admitted the allegations in the Notice to Appear and conceded removability, but renewed his request for asylum, withholding of removal, and protection under the CAT. The IJ determined that Wijono was ineligible for asylum because he failed to file his application for asylum within one year of his arrival in the United States as required by section 208(a)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a)(2)(B) (2000). The IJ further concluded that Wijono failed to prove that he was entitled to withholding of removal or relief under the CAT. In lieu of removal, however, the IJ granted Wijono the privilege of voluntarily departing the United States.

Wijono appealed to the BIA. The BIA affirmed the IJ's decision and dismissed Wijono's appeal. Wijono now files a petition for review of the BIA's order.

II.

We begin by addressing Wijono's claim for asylum. The BIA concurred with the IJ's determination that Wijono was statutorily ineligible for asylum because he

failed to file an asylum application within one year of arriving in the United States as required by 8 U.S.C. § 1158(a)(2)(B). The BIA also concluded that Wijono did not demonstrate the existence of either extraordinary or changed circumstances sufficient to waive the one-year filing requirement. See id. § 1158(a)(2)(D). Based on these conclusions, the BIA did not consider the merits of Wijono's asylum claim.

Wijono concedes that he did not file his application for asylum within one year of arriving in this country but argues that the IJ erred by not permitting him to establish the presence of circumstances sufficient to waive the time requirement. We have no jurisdiction to review the BIA's determinations concerning waiver of the one-year filing requirement. See id. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."); Ignatova v. Gonzales, 430 F.3d 1209, 1214 (8th Cir. 2005) (ruling that whether circumstances exist to permit a late filing "is a discretionary judgment of the Attorney General" that is "unreviewable by this court"). Wijono attempts to invoke our jurisdiction, however, by asserting that his Fifth Amendment due-process rights were violated in the IJ's processing of his asylum claim.[1] Pursuant to the Real ID Act of 2005, we do have jurisdiction to review constitutional claims and questions of law. 8 U.S.C.A. § 1252(a)(2)(D) (2005); Salkeld v. Gonzales, 420 F.3d 804, 809 (8th Cir. 2005). But even our consideration of Wijono's asylum claim via the constitutional route is foreclosed: Wijono failed to raise his due-process argument in his appeal to the BIA. Wijono's failure to exhaust his administrative remedies precludes our review of his argument at this stage. See Frango v. Gonzales, No. 04-2663, 2006 WL 287957, at

---

[1]Wijono argues that the IJ denied him a "full and fair hearing" because the IJ (1) neglected to inform him of his right to present evidence and testimony on his own behalf and (2) inadequately explained how he could establish an exception to the one-year filing requirement. Petitioner's Opening Brief at 25; see also Al Khouri v. Ashcroft, 362 F.3d 461, 464–65 (8th Cir. 2004) (ruling that "[t]he Fifth Amendment's due process clause mandates that removal hearings be fundamentally fair" and that, when an alien appears pro se, an IJ has a duty to ensure that the record is fully developed).

*3 (8th Cir. Feb. 8, 2006) ("[I]t was to the BIA, not to this court, that Mr. Frango should have first raised his allegations that the IJ deprived him of a fair hearing."); Kimumwe v. Gonzales, 431 F.3d 319, 323 (8th Cir. 2005) ("We decline to consider Kimumwe's contentions that he was denied due process in the hearing before the Immigration Judge, because he failed to present those issues in an appeal to the BIA."); Etchu-Njang v. Gonzales, 403 F.3d 577, 583 (8th Cir. 2005) (recognizing a "strong rationale for a court-imposed issue exhaustion requirement" in immigration cases);  8 U.S.C. § 1252(d)(1) (2000) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies . . . .").[2]

## III.

We turn to Wijono's challenge to the denial of his application for withholding of removal.  To qualify for withholding of removal, Wijono must establish that there is a "clear probability" that his life or freedom will be threatened on account of a protected ground—in this case ethnicity or religion—if he is returned to Indonesia. Mompongo v. Gonzales, 406 F.3d 512, 514 (8th Cir.) (citing 8 U.S.C. § 1231(b)(3)(A)), cert. denied, 126 S. Ct. 425 (2005).  Said differently, withholding of removal will be granted only if Wijono proves "that it is more likely than not that he will be persecuted" upon return to Indonesia. Madjakpor v. Gonzales, 406 F.3d 1040, 1044 (8th Cir. 2005).  "Persecution is the 'infliction or threat of death, torture, or injury to one's person or freedom, on account of' a protected characteristic." Id. (quoting Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002)).  "Low-level intimidation and harassment alone do not rise to the level of persecution, nor does harm arising from general conditions such as anarchy, civil war, or mob violence

---

[2]We recognize that courts may excuse a failure to satisfy the issue-exhaustion requirement in limited circumstances where injustice might otherwise result, see Frango, 2006 WL 287957, at *2, but we find nothing that would justify an exception in this case.

ordinarily support a claim of persecution." Id. (internal quotation marks and citations omitted).

The BIA concluded that Wijono failed to establish the clear probability of persecution essential to justify withholding of removal. The BIA determined that Wijono "did not establish persecution under the Act" or "a nexus between any incidents described, which appear to be random criminal acts, and a protected ground under the Act." Admin. Rec. at 2 (Jan. 28, 2005, Decision of the BIA).

We review the BIA's decision denying Wijono's request for withholding of removal under the substantial evidence standard. See Salkeld, 420 F.3d at 809. Under this standard, we must uphold the denial unless Wijono shows that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite probability of persecution. Id.

Wijono presented evidence that, since he was a child, he has been called names and harassed in Indonesia because of his Chinese ethnicity and Christian faith. While in high school in 1988, Wijono was detained by Indonesian police officers for three hours on the basis that the new motorcycle he was driving required an inspection. When Wijono attempted to speak to the officers, they slapped his face and made anti-Chinese statements. In 1994, an unknown man, whom Wijono believed to be Muslim, approached Wijono on the street with a kitchen knife and attempted to rob him. But Wijono fought the man and threw him into a canal. Finally, in 1996, a mob of seven or eight unknown individuals broke into Wijono's father's business, forcing Wijono, his father, and three employees to flee. According to Wijono, members of the mob yelled, "No more Christians on our land! Wipe infidelity out from our land! Moslem reign forever!" Admin. Rec. at 235 (Affidavit of Wijono). Wijono's father retrieved cash from the business office and ran from the mob. His father was caught by mob members, who then beat him and stole the cash. Wijono's father died as a result of the injuries he sustained in the beating. While being chased by the mob, Wijono stumbled

and sustained minor bruises. These incidents were reported to the Indonesian police, but the police took no action.

The evidence lends some support to Wijono's alleged fear of persecution. We cannot say, however, that the evidence was so compelling that the BIA could not have reasonably arrived at its conclusion that Wijono failed to meet the clear-probability standard for withholding of removal. First, there is no clear indication that the incidents described were motivated by the ethnicity or religion of Wijono and his father. Although some of the attackers made anti-Chinese statements, this alone is insufficient to establish a nexus between the attacks and a protected ground. See Lie v. Ashcroft, 396 F.3d 530, 535–36 (3d Cir. 2005) (holding that ethnic slurs made during robberies of the home and business of Chinese Christians in Indonesia were insufficient to conclude that the intrusions were on account of ethnicity); Halim v. Ashcroft, 109 Fed. Appx. 164, 165–66 (9th Cir. 2004) (holding that substantial evidence supported the IJ's finding that robbery of Chinese petitioner by native Indonesians was the result of random crime even though the robbery occurred at a Chinese restaurant and the robbers referred to the victims as "you Chinese"). Indeed, the attempted robbery of Wijono in 1994 and the attack of Wijono's father in 1996 could have been based on simple criminal intent, rather than ethnic or religious bias. Second, the harassment Wijono suffered was sporadic and did not rise to the level of persecution necessary to establish eligibility for withholding of removal. See Setiadi v. Gonzales, No. 04-3409, 2006 WL 250273, at *2 (8th Cir. Feb. 3, 2006) ("Even minor beatings or limited detentions do not usually rise to the level of past persecution."); Berte v. Ashcroft, 396 F.3d 993, 996 (8th Cir. 2005) ("Low-level intimidation and harassment alone do not rise to the level of persecution."); see also Marbun v. Gonzales, No. 05-9519, 2005 WL 3551174, at *2 (10th Cir. Dec. 29, 2005) (holding that "discrimination and anti-Christian sentiment in Indonesia" suffered by Chinese Christians was "deplorable" but did not "compel a finding of persecution"). Third, Wijono's mother, sisters, and brother continue to live in Indonesia without incident. "The reasonableness of a fear of persecution is diminished when family

members remain in the native country unharmed, and the applicant himself had not been singled out for abuse." Krasnopivtsev v. Ashcroft, 382 F.3d 832, 839 (8th Cir. 2004).

Wijono argues that even if the evidence did not establish that he will be singled out individually for persecution if returned to Indonesia, he is nonetheless eligible for withholding of removal because there is a "pattern or practice of persecution" of Chinese Christians in Indonesia, "such that it is more likely than not that his . . . life or freedom would be threatened upon return to that country." 8 C.F.R. § 208.16(b)(2)(i)–(ii) (2005). In an attempt to establish a pattern or practice of persecution, Wijono submitted documentary evidence detailing attacks on Indonesia's Chinese Christian population by Muslim Indonesians. According to the 2001 United States Department of State Indonesia Country Report on Human Rights Practices (2001 Report) and news articles, the most significant attacks occurred in 1998 when Muslim Indonesians looted and burned Chinese-owned businesses, raped Chinese women, and murdered an untold number of Chinese citizens. The 2001 Report further mentioned that in 2000 Christians were tortured by Muslims in certain areas of the country when they refused to convert to Islam.

While it is clear from the record that violence against Chinese Christians persists in Indonesia, we cannot say that such violence necessarily constitutes a pattern or practice of persecution. To constitute a "pattern or practice," the persecution of the group must be "systemic, pervasive, or organized." Ngure v. Ashcroft, 367 F.3d 975, 991 (8th Cir. 2004). The 2001 Report indicates that there has been a sharp decline in violence against Chinese Christians since the 1998 riots. The Indonesian government officially promotes ethnic and religious tolerance, and Indonesia recently repealed prohibitions on teaching the Chinese language and celebrating the Chinese New Year. The 2001 United States Department of State International Religious Freedom Report on Indonesia further states that the continued attacks against Christians are perpetrated by groups of Muslim extremists and are geographically isolated, not country-wide.

Moreover, the evidence indicates that religious persecution in Indonesia appears to be inflicted by fellow civilians and not the result of governmental action or acquiescence. Given these considerations, we conclude that the BIA's determination that Wijono is not eligible for withholding of removal is supported by substantial evidence.[3]

IV.

Finally, Wijono asserts that the BIA erred in denying him relief under Article III of the CAT. Relief under the CAT is available only if an alien proves "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2) (2005). Torture is narrowly defined as an act causing severe pain or suffering inflicted by or with the acquiescence of a person acting in an official capacity. Id. § 208.18(a)(1). It is limited to "extreme form[s] of cruel and inhuman treatment." Id. § 208.18(a)(2).

Wijono argues that the BIA erred by failing to analyze his request for relief under the CAT independently of his asylum and withholding claims. Independent analysis is only required, however, "when there is evidence that the alien might be tortured for reasons unrelated to [the alien's] claims for asylum and withholding of removal." Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005). Because Wijono alleged the same factual basis for all three claims, a separate analysis was not necessary. The BIA's conclusions that warrant denial of Wijono's withholding of

---

[3]Wijono asks us to follow the lead of the Fifth Circuit in concluding that a pattern of persecution of Christians exists in Indonesia. See Eduard v. Ashcroft, 379 F.3d 182, 192 (5th Cir. 2004). For the reasons stated in our opinion, however, we conclude that the record does not establish that a pattern or practice of persecution of Chinese Christians exists in Indonesia. See Lie, 396 F.3d at 537 (holding that violence against Chinese Christians in Indonesia did not constitute a pattern or practice of persecution).

-8-

removal claim also warrant denial of relief under the CAT.  See id.; Madjakpor, 406 F.3d at 1046.[4]

We deny the petition for review.

_____

_____

[4]Wijono has moved to supplement the administrative record with country reports and news articles not presented to the IJ or BIA.  We deny the motion.  In deciding a petition for review, we may only consider "the administrative record on which the order of removal is based."  8 U.S.C. § 1252(b)(4)(A) (2000); see also Berte, 396 F.3d at 997 (refusing to consider country reports not submitted to the IJ because of the limit imposed by 8 U.S.C. § 1252(b)(4)(A)).  We note that all of the newly proffered country reports and many of the newly proffered news articles were in existence and available at the time of the 2002 and 2003 removal hearings before the IJ.