# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1002

_____

| | | |
|---|---|---|
| Amit Kumar Khilan, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of |
| v. | * | the Board of Immigration Appeals. |
| | * | |
| Eric H. Holder, Jr.,[1] | * | [PUBLISHED] |
| Attorney General, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: October 13, 2008
Filed: March 5, 2009

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Amit Khilan petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his application for asylum and withholding of removal. We deny his petition for review.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

# I.

Khilan is a citizen of India who entered the United States without inspection on January 5, 2004. The government initiated removal proceedings against him on January 9, 2004. On September 1, 2004, Khilan conceded removability and filed an application for asylum and related relief. In his application, Khilan claimed that he had been kidnapped and held for ransom by "Islamic extremists in the Kashmir region." At an October 27, 2006, hearing before an immigration judge ("IJ"), Khilan testified about his family in India and the facts surrounding his kidnapping.

Khilan's grandfather and, to a lesser extent, Khilan's father were active in politics, and both held leadership positions in Shiv Sena, a Hindu political party. (Khilan's uncle testified that Khilan's grandfather had also once run for a mayoral position with the BJP, a large Hindu-nationalist political party). Khilan testified that his grandfather was well known throughout the state of Haryana due to his political activities. Khilan's family is relatively wealthy, and Khilan attended a private school in Lucknow.

On the morning of July 3, 2003, a group of men attacked Khilan on his way to school. The assailants hit Khilan in the head and knocked him unconscious. They bound him and drove him seven or eight hours away to a village near Kolkata (Calcutta), where they kept him in a dark room within a mosque. At one point, Khilan managed to escape but while attempting to hitchhike away was caught again. In retaliation for his escaping, the kidnappers beat him unconscious. According to Khilan, the kidnappers told him that they kidnapped him because his family's notoriety would bring them fame and because his family's wealth assured the kidnappers a large ransom. The kidnappers demanded a fifty-lakh-rupee ransom, which was later negotiated down to thirty-five lakh rupees. They released Khilan after

fifteen or sixteen days of captivity, following payment of the ransom. He eventually made his way back to his family and received medical treatment.

The kidnappers threatened to kill Khilan if Khilan or his family sought help from the police. Out of fear, Khilan did not report his kidnapping. The police nevertheless became aware of the kidnapping from one of Khilan's family's servants. The police came to Khilan's house to ask questions, but Khilan and his family refused to cooperate. The police persisted with their investigation and made a number of arrests. The police asked Khilan to identify the suspects, but he again refused to aid the investigation.

In addition to Khilan's testimony regarding the kidnapping, Khilan submitted several documents detailing political and religious violence in India. These documents related numerous incidents of mob violence, abuses of police power, and endemic corruption.

The IJ accepted as credible Khilan's testimony regarding his kidnapping generally but found that Khilan failed to establish that the government was unwilling or unable to control Khilan's kidnappers. Accordingly, the IJ determined that Khilan had not suffered governmental "persecution" and did not establish a fear of future persecution. The IJ denied Khilan's application. The BIA adopted and affirmed the IJ's decision. Khilan appealed the BIA's determination as to his asylum and withholding of removal claims. We review the BIA's decision, but where, as here, the BIA has adopted the IJ's factual findings, we review those findings as part of the final decision. Ismail v. Ashcroft, 396 F.3d 970, 974 (8th Cir. 2005).

II.

The Attorney General may grant asylum to an alien who demonstrates that he is a "refugee" as defined by 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1).

"Refugee" is defined thereby as a person who "is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of" his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). We have approved the BIA's definition of "persecution," which requires that the harm be inflicted "either by the government of a country or by persons or an organization that the government was unable or unwilling to control." Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005) (internal quotations and alterations omitted). Khilan makes no allegation that the government itself inflicted the harm. He argues instead that the harm was inflicted by private individuals that the government was unwilling to control. "[A]n applicant seeking to establish persecution by a government based on violent conduct of a private actor must show more than difficulty controlling private behavior. Rather, the applicant must show that the government condoned it or at least demonstrated a complete helplessness to protect the victims." Id. (internal alterations, quotations, and citation omitted); see also Valioukevitch v. INS, 251 F.3d 747, 749 (8th Cir. 2001) (rejecting an asylum claim where incidents had not "occurred with the imprimatur" of government officials).

Whether the Indian government is "unable or unwilling" to control the kidnappers is a factual question. See Menjivar, 416 F.3d at 921. We review the administrative findings of fact "to determine whether they are supported by substantial evidence on the record as a whole," meaning that the findings "are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. at 920–21 (quoting 8 U.S.C. § 1252(b)(4)(B)).

Here, after a review of the evidence presented, the IJ stated that the court had "every reason to believe that the Indian government, which opposes Kashmir Muslim separatists, would provide protection to people who are being threatened by them." The record includes significant evidence of separatist and religious violence, as well

as widespread corruption and abuse of police power. There is no indication, however, that the Indian government condones persecution of individuals that oppose or are targeted by Kashmiri separatists. To the contrary, the record shows that Indian security forces are actively combating Kashmiri insurgents. As the IJ noted, "This is clearly not a situation where the government of India is providing some sort of tacit support to the Kashmiri separatists." We also note that much of the evidence Khilan presented is inapposite to Khilan's situation. Khilan is a Hindu with family connections to Hindu political parties. The examples of religious persecution he cited involved attacks generally directed at Christians or Muslims, not at members of the Hindu majority. Bad governmental acts by a Hindu-majority government or Hindu political parties against non-Hindu minority religious groups add little, if any, support for a claim of governmental acquiescence to violence directed at Hindus.

Furthermore, evidence of general problems of ineffectiveness and corruption do not, alone, require a finding that the government is "unable or unwilling" where the evidence specific to the petitioner indicates the contrary to be true. See id. at 922 ("We deem the news articles regarding gang activity too general to dictate a conclusion that [a gang member's] specific acts directed toward [the petitioner] were persecution by the government."). Here, not only were the police willing to investigate the kidnapping, but they had even arrested a number of suspects. The police attempted to forward their investigation into the kidnapping, and, on the facts before us, the government cannot be faulted for Khilan's own refusal to cooperate with the investigation.

The IJ found that "this is not a situation where there is any sort of governmental approval or acquiescence in any harm directed against the respondent." Substantial evidence supports this finding, and the record as a whole does not compel a conclusion to the contrary. Substantial evidence also supports the denial of withholding of removal. To be eligible for withholding of removal, applicants must show a clear probability that they will face persecution in the country of removal.

Valioukevitch, 251 F.3d at 749. "This 'clear probability' standard is more difficult to meet than the 'well-founded fear' standard for asylum." Id. Because Khilan failed to meet the standard for asylum, it follows that he also failed to meet the standard for withholding of removal. See Ismail, 396 F.3d at 975; Behzadpour v. United States, 946 F.2d 1351, 1354 (8th Cir. 1991).

\* \* \*

Substantial evidence on the record as a whole supports the IJ's conclusion that Khilan did not show that the government was unable or unwilling to control his abductors. We therefore deny the petition for review.

_____