NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1804
_____

MOHAMMED ABDOULAYEE DOLLEY,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No.A089-190-416)
Immigration Judge:  Honorable Dorothy Harbeck
_____

Argued July 12, 2011

Before:  RENDELL, SMITH and FISHER, Circuit Judges.

(Opinion Filed: July 28, 2011)
_____

Sarah L. Cave. Esq.
Michael Tiger, Esq.    **[ARGUED]**
Hughes, Hubbard & Reed
One Battery Park Plaza
New York, NY  10004
    *Counsel for Petitioner*

Jacob A. Bashyrov, Esq.
Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
John J. W. Inkeles, Esq.    **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation, Civil Division

P.O. Box 878
Ben Franklin Station
Washington, DC  20044
   *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Petitioner Mohammed Abdoulayee Dolley seeks review of a final order of removal by the Board of Immigration Appeals ("BIA") pursuant to 8 U.S.C. § 1252(b). He contends that the Immigration Judge ("IJ"), whose decision the BIA affirmed without opinion, erred in denying his application for asylum under 8 U.S.C. § 1158, withholding of removal pursuant to 8 U.S.C. § 241(b)(3), and for relief under the Convention Against Torture, 8 C.F.R. § 1208.16(c).  We will deny his Petition.

I.

We write solely for the benefit of the parties and presume their familiarity with the factual context and procedural history of this case.  Dolley, a Liberian national, returned to his hometown of Ganta City in September 2006, having previously fled to neighboring Guinea in 2003 to escape a decades-long civil war that was motivated in part by animosity between the Mandingo and Mano ethnic groups.  Upon his return, Dolley, a Mandingo, discovered that his family's land had been occupied by several Mano, and his family's home had been destroyed and replaced with temporary settlements.  Dolley testified that unspecified Manos on the street and Mano squatters on his land threatened and taunted him and other Mandingos.

2

At the same time, the Liberian government established a Land Reform Commission to address the frequent land disputes between Mandingos and Manos. This Commission visited Ganta City in late 2007, and Dolley sought to reclaim his land and presented the Commission with a copy of the deed to his land, which he had obtained from his mother in Guinea. The Commission ordered that no construction should occur on the disputed land while it resolved the claim. In spite of the order, a Mano named William Jalla began constructing a permanent structure on Dolley's land in March 2008, and refused to halt construction after Dolley confronted his contractor with the Commission's order. Dolley and several Mandingos then destroyed the structure. Jalla pressed charges against Dolley for the destruction, but a magistrate judge released Dolley on bond. A week later, several Mano approached Dolley's girlfriend and told her they were going to kill him, and five men came to Dolley's temporary home the same night, called him a criminal, and chased him when he attempted to escape.

Dolley fled to his cousin's house in Monrovia, the national capital, and resided there from March to September 2008. During that time, Dolley visited a Monrovia market frequented by travelers from Ganta, where he encountered Jalla. Jalla assaulted Dolley and threatened to kill him, and Dolley fled to a police station. As a result of this incident, Dolley's cousin procured a United States lawful permanent resident card and Liberian passport for Dolley in the name of another individual, and Dolley flew to New York, where he was detained.

At his hearing, Dolley presented his birth certificate, which his cousin had procured for him while Dolley was in detention, to corroborate his identity, but offered

no other corroboration for his testimony. After a two-day merits hearing, the IJ found Dolley credible, but denied his claims for relief on grounds that he had failed to corroborate his claims and did not provide an explanation for his failure to do so. The IJ next observed that Dolley had failed to demonstrate past persecution based on the two incidents in which Dolley was directly threatened, holding that Dolley's fear of harm was grounded in a personal dispute related to property rights. The IJ found the remainder of Dolley's claims of persecution insufficiently substantial or imminent to constitute past persecution or to serve as a basis for a finding of a well-founded fear of future persecution. The IJ also determined that Dolley's fear of persecution was not country-wide as he had not established that the Liberian government was unable or unwilling to protect him or an inability to reasonably relocate to another part of Liberia.

The IJ likewise denied Dolley's request for relief under the more stringent requirements for withholding of removal and the Convention Against Torture in light of his inability to prove that he is more likely than not to be subject to persecution or torture if removed to Liberia. The BIA affirmed without opinion pursuant to 8 C.F.R. § 1003.1(e)(4).

II.

Because the Board summarily affirmed and adopted the IJ's decision, we review the latter decision. *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003). The IJ's credibility determinations and findings of fact are evaluated under the substantial evidence standard, and we "will not disturb the IJ's [findings] if they are supported by reasonable, substantial and probative evidence on the record considered as a whole." *Id.*

4

(citation & quotations omitted). "Under this deferential standard, the IJ's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Kibinda v. Att'y Gen.*, 477 F.3d 113, 119 (3d Cir. 2007) (citation & quotations omitted).

As a general principle, an asylum applicant possesses the burden of demonstrating his entitlement to relief as a "refugee" by establishing that he is "'unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Valdiviezo-Galdamez v. Att'y Gen.*, 502 F.3d 285, 288 (3d Cir. 2007) (quoting 8 U.S.C. § 1101(a)(42)). To establish past or future persecution, "an applicant must 'show past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control.'" *Kibinda*, 477 F.3d at 119 (citation omitted).

Dolley avers that his testimony of physical mistreatment and economic deprivation satisfied this threshold for a finding of past persecution, and contends that the IJ improperly required corroboration of relevant facts despite finding Dolley credible. We disagree. Under the governing statute, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). Corroboration may reasonably be expected where "the facts are central to the applicant's claim and easily subject to verification," and we defer to the trier of fact's "conclusive" findings on

5

availability of corroborating evidence unless we find "that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." *Id.* §§ 1252(b)(4)(B), (D)). We have consistently held that "failure to produce corroborating evidence may undermine an applicant's case where (1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure." *Chukwu v. Att'y Gen.*, 484 F.3d 185, 191 (3d Cir. 2007) (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001)).

Here, the IJ engaged in the *Abdulai* inquiry, identifying the facts for which the expectation of corroboration was reasonable – evidence pertaining to the land ownership dispute – and discussed Dolley's failure to corroborate said facts. Furthermore, under *Abdulai*'s third prong, the IJ provided Dolley ample opportunity at the hearing to explain his failure to obtain the corroborating evidence, expressly inquiring why Dolley had not attempted to acquire corroboration of his deed and noting that the lack of corroboration – or sufficient explanation as to its absence – undermined Dolley's request for asylum. This factual finding is supported by substantial evidence as "[t]here is nothing in the record to suggest that a 'reasonable trier of fact' would be '*compelled* to conclude that corroborating evidence is unavailable." *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)) (emphasis added). Accordingly, we find no error in the IJ's ruling in this regard.[1]

---

[1] Because the IJ properly performed *Abdulai*'s three-step inquiry, she was not required to provide notice of the corroboration she expected or to continue the hearing so that Dolley could obtain such evidence. Dolley conceded the centrality of the land deed to his

As mentioned, threats rising to the level of persecution "must be on account of a statutorily protected ground," and "we have refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien." *Chavarria v. Gonzales*, 446 F.3d 508, 518 (3d Cir. 2006) (citation omitted). Here, the several threats by various Mano towards Dolley upon his return to Ganta City were "sinister and credible," and may have been based on Dolley's Mandingo status. These general threats, however, were directed at all returning Mandingos, were "not highly imminent or concrete," and notably, did not result in any physical violence or harm until Dolley proactively destroyed Jalla's construction. *See id.* As such, we find no error in the IJ's rejection of Dolley's claim that these threats rose to the level of persecution.

At the same time, Dolley testified to two incidents in which, he urges, he was directly in danger: (1) when he was threatened and chased by Jalla and other Mano at his home, and (2) when he unexpectedly met and was assaulted by Jalla in a Monrovia market. The IJ concluded that this asserted mistreatment related to a personal dispute and, therefore, did not constitute persecution on account of a protected ground. "[A]sylum may not be granted if a protected ground is only an 'incidental, tangential, or superficial' reason for persecution of an asylum applicant," and "factually intertwined

claim and appreciated the need for corroboration, but, when asked by the IJ, he failed to sufficiently explain his failure to produce the deed despite his cousin's residence in the same city as the government registry office where the deed was lodged. Under these circumstances, notice would have been pointless. At the same time, a continuance was unwarranted since the IJ afforded Dolley an opportunity during the hearing to explain why he was unable to produce the corroborative evidence. At that point, the IJ could properly weigh, in lieu of the absent corroborative evidence, Dolley's explanation in deciding whether he had satisfied his burden of proof.

7

explanations for persecution are irrelevant where the proximate motivation for mistreatment of an applicant is not a protected ground." *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130, 132 (3d Cir. 2009) (citation omitted). In turn, we have opined that "retaliation in response to a personal dispute" does not present a sufficient nexus between persecution and one of the protected grounds. *Amanfi v. Ashcroft*, 328 F.3d 719, 727 (3d Cir. 2003).

Here, the apparent "proximate motivation" for Dolley's mistreatment was his destruction of Jalla's construction on the disputed land. The record provides that while Jalla had never threatened Dolley in the five months prior to Dolley's destruction of Jalla's structure, only after the destruction did Jalla and a group of Manos call Dolley a "criminal," and chase and assault him. This retaliation supports the IJ's reasoning that the asserted mistreatment was "fundamentally a personal dispute," and Dolley's Mandingo status was merely "an incidental factor in [his] persecution." *Ndayshimiye*, 557 F.3d at 130, 132. Accordingly, substantial evidence does not "compel" a contrary conclusion to the one reached by the IJ. *See Kibinda*, 477 F.3d at 119.[2]

Moreover, for mistreatment perpetrated by private actors to rise to the level of persecution, "the petitioner has the burden to prove that it was conducted by forces the

_____

[2] Dolley's secondary argument that his loss of income from the disputed land constituted economic persecution likewise fails. We have previously held that "the deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom" may be sufficient to constitute persecution. *Li v. Att'y Gen.*, 400 F.3d 157, 168 (3d Cir. 2005). Yet Dolley's tenuous – and potentially temporary – loss of income from the land has not deprived him of "liberty, food, housing, employment, and other essentials of life." *Id.* Additionally, the Liberian government is attempting to address his loss through a legal process by way of the Land Commission. As such, Dolley's situation does not reflect the "severe economic disadvantage" necessary for a finding of economic persecution.

government is unable or unwilling to control." *Valdiviezo-Galdamez*, 502 F.3d at 288

(citation & quotations omitted). Because Dolley does not allege that the Liberian

government is persecuting him, he had to demonstrate that the government was unable or

unwilling to protect or assist him in recovering the disputed property from a small group

of Mano. As the IJ determined, Dolley failed to make such a showing in light of the

efforts undertaken by the Liberian government to remedy the ethnic disputes between the

various groups, and the specific involvement of the Land Commission and the local

Mano magistrate in adjudicating Dolley's claim. (App'x 16, 472-73, 479); *see also*

*Khilan v. Holder*, 557 F.3d 583, 586 (8th Cir. 2009) ("[E]vidence of general problems of

ineffectiveness and corruption do not alone require a finding that the government is

'unable or unwilling' where the evidence specific to the petitioner indicates the contrary

to be true."). Moreover, Dolley does not indicate that he actually reported any imminent

threats or violence to the police, making it difficult for him to contend that the

government was unable or unwilling to prevent persecution. *See, e.g.*, *Aliyev v. Mukasey*,

549 F.3d 111, 119 (2d Cir. 2008). As a result, we discern no error in the IJ's conclusion

on this issue.

Finally, Dolley's claim of a well-founded fear of future persecution is significantly

undermined by the fact that an applicant's fear of persecution must be country-wide, and,

as the IJ found, Dolley failed to establish that he could not reasonably relocate to another

part of Liberia unmolested. The governing regulation provides that "[a]n applicant does

not have a well-founded fear of persecution if the applicant could avoid persecution by

relocating to another part of the applicant's country of nationality . . . if under all the

9

circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(2)(ii). The record supports the IJ's finding that Dolley encountered no threats and was entirely unharmed in the Liberian capital city of Monrovia until he came across Jalla at a market in reference to the particular land dispute. Dolley failed to press this issue in his briefing before us, merely arguing that the government bore the burden since he had established past persecution. Because the IJ reasonably concluded that Dolley's experience did not constitute past persecution, he retained the burden of demonstrating a well-founded fear of persecution throughout Liberia, which he failed to satisfy. Accordingly, Dolley's asylum claims cannot succeed.

We will also affirm the IJ's denial of withholding of removal and CAT protection, but on procedural, rather than substantive, grounds. Section 242(a)(1) of the Immigration and Nationality Act provides us with jurisdiction to review final orders of removal, but "limits our jurisdiction to cases where a petitioner 'has exhausted all administrative remedies available as of right . . . .'" *Lin v. Att'y Gen.*, 543 F.3d 114, 119 (3d Cir. 2008) (quoting 8 U.S.C. § 1252(a)(1), (d)(1)). "This statutory requirement [is] intended to ensure that the BIA has had a full opportunity to consider a claim before it is submitted to a federal court, [and] requires that a petitioner 'raise and exhaust his . . . remedies as to each claim or ground for relief if he . . . is to preserve the right of judicial review of that claim.'" *Kibinda*, 477 F.3d 113, 120 n.8 (quoting *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003)).

Here, the record confirms that Dolley did not contest the IJ's denial of his petition for withholding of removal and for CAT protection in his appeal to the BIA, thereby

failing to raise "each claim or ground for relief" for which he presently seeks our review. *Id.*; (*see also* App'x 51-80.) This "failure to present an issue to the BIA constituted a failure to exhaust, thus depriving us of jurisdiction to consider it." *Lin*, 543 F.3d at 126.

Curiously, both parties contend that the BIA's affirmance of the IJ's decision without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4), satisfied the exhaustion requirement of § 242(d)(1) because, as we noted in *Lin*, "[w]here the BIA has issued a decision considering the merits of an issue, even sua sponte, [exhaustion requirements] have been fulfilled."[3] 543 F.3d at 125. Our holding in *Lin*, however, is entirely distinguishable from the instant procedural posture. There, we were persuaded by the Tenth Circuit's reasoning that exhaustion may be satisfied despite a petitioner's failure to raise an issue before the BIA where the Board "'issues a full explanatory opinion or a discernible substantive discussion on the merits over matters not presented by the alien,'" and conducts "an independent review of the record and [ ] exercise[s] its own discretion in determining its agreement with the reasoning and result of the IJ." *Id.* at 125-26 (quoting *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007)). However, we explicitly differentiated cases in which "'the BIA summarily affirms the IJ decision in toto without

---

[3] 8 C.F.R. § 1003.1(e)(4)(i) provides:

> The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> > (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or
> > (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

11

further analysis of the issue,'" or "issue[s] a one-member streamlined opinion under 8 C.F.R. § 1003.1(e)(4)." *Id.* (quoting *Sidabutar*, 503 F.3d at 1122 (agreeing to jurisdiction because the "BIA sufficiently considered the applicant's two unraised claims in its final order" after a thorough explanatory opinion, but emphasizing that this exhaustion principle should be "construed narrowly" and would not apply to a simple affirmance without opinion under 8 C.F.R. § 1003.1(e)(4))).  As such, although we did not specify "the precise limitations" of this exhaustion principle, our holding in *Lin* is a limited one.

Here, unlike *Lin*, the BIA affirmed without opinion under 8 C.F.R. § 1003.1, offering no analysis on the merits, and did not address "the issue[s] independently from the IJ [to] ensure [ ] that the record is adequate for our review."  543 F.3d at 125 (citing *Weinberger v. Salfi.*, 422 U.S. 749, 765 (1975)).  Accordingly, we lack jurisdiction to consider Dolley's unexhausted withholding of removal and CAT claims.

### III.

For the foregoing reasons, we will deny Dolley's Petition for Review.

12